DUVIC v. FRIEDRICHS & DUPAS, ET AL.

(November 26, 1928. Opinion and Decree.)

Guion & Upton and W. W. Ogden, of New Orleans, attorneys for plaintiff, appellee.

E. M. Heath, of New Orleans, attorney for Friedrichs & Dupas.

Milner & Porteous, J. H. Weiner and S. G. Roos, of New Orleans, attorneys for Frank Jordano, appellant.

JANVIER, J. ad hoc. Plaintiff, a lady about sixty years of age, was a "prospect" riding in the automobile of the defendant, a real estate agent, when, as a result of a collision with another automobile, she was injured. On the afternoon on which the accident occurred, she had called at the office of Friedrichs and Dupas, real estate agents, with reference to an advertisement of certain property on Metairie Ridge. She wanted to make an investment and desired to investigate the advisability of investing in the lands whose virtues were set forth in the advertisement. At the office of Friedrichs & Dupas she was turned over to Frank Jordano, the other defendant.

Jordano told plaintiff that the land she was interest in was all sold, but that he would like to show her other lands on Metairie Road, and, at his solicitation she and her sister agreed to let him drive them out in his automobile to see the lands he was offering. They entered his car, and, with him at the wheel, proceeded on their journey to Metairie Road. All parties agree that until they reached the city limits the car was driven at a moderate speed. According to the two ladies, when they reached a point at or near the city limits, the speed of the car was greatly increased, and from then on until the time of the accident, it was, in their judgment, quite excessive. When the car reached a point near the Cedar Telephone Exchange in Jefferson Parish, it collided violently with a large seven-passenger Paige car, going in the opposite direction.

Jordano's story is that he was proceeding at about fifteen miles per hour and that, as he reached the curve just before the point at which the accident afterwards occurred, he sounded his horn three times, but that up to that time he had not seen the Paige car approaching from the other direction. This, he says, was due to the curve and to intervening weeds and objects. He states that when the Paige car was about half a square or so away, he saw it coming; that it was on the wrong side of the road, and was swaying or swerving from side to side, and that its speed was terrific; that he was on the right side of the road and that he momentarily expected the Paige car to cross to its right and it was only at the last moment that he realized it was not going to do so. It was then, according to his version, that he turned suddenly to his left, in an effort to avoid a head-on crash. He was not successful, however, and his car was struck on its left side just astern of its midsection.

Plaintiff and her sister contend that Jordano's speed was from thirty to thirty-five miles an hour; that he remained in the middle of the road until it was too

late to avoid the oncoming Paige car, and that he could have avoided the accident had he pulled to the right, as they claim he should have done, or had his speed not been excessive.

There is no question that, at the time of the collision, Jordano's car was on the left side of the road. Of course, it is the duty of a driver to do all he can to avoid a collision. Ordinarily, collisions are avoided by the respective drivers remaining on the right side of the road. It therefore may be said to be the duty of a driver who is on the left side of the road at the time of the collision to bear the burden of proving that it was necessary for him to be in that position, and that had he been on the other side of the road, the accident would have occurred anyway.

The evidence is quite conflicting. It seems that the Paige car was occupied by several men and a woman, who were characterized by various witnesses as "drunks." Either that car, or one very much like it, and containing a crowd of people in a similar condition, had stopped at a cold drink stand a short time before the accident, and the proprietor testified as to their condition.

The case would be a very difficult one were it not for the fact that we may call to our assistance the opinion of the trial Judge, who saw and heard all of the witnesses. In number, the witnesses for the defendant predominate, but we believe that the corroborating circumstances are rather with the plaintiff. The trial Judge no doubt had reasons for disregarding the testimony of some of the witnesses for the defendant. What his reasons were we can only conjecture. A careful reading of their testimony, however, leads to the belief that possibly he was of the opinion that the testimony of each coincides a little bit too exactly with that of all of the others. We do not mean to infer that they were not telling the truth, as they saw it, but it should be remembered that they were all riding in a truck, going in the opposite direction, and were talking to one another. The estimates given by each as to distances, speeds, warning signals, etc., coincides so exactly with the estimates given by all of the others that we are forced to the conclusion that, while they gave their versions as they remembered them, their remembrance is based probably on discussions among themselves, rather than on actual recollections of what they saw at the time of the accident.

As to the speed at which the defendant's car was being driven, it seems improbable that it was as moderate as he claims. The two lady occupants testify positively that he was going at a very fast speed and they both state that they had frequent occasion to ride in automobiles and were to some extent familiar with matters of that kind. Furthermore, it appears that the defendant Jordano had told them that he could reach the property he wanted them to inspect in about fifteen or twenty minutes, whereas, at the time of the accident, they had already been riding some twenty-five or thirty minutes. Let us say, in passing, that we were much impressed by the extravagant claim of the defendant, i. e., "I could get there in five minutes providing the bridges didn't rise by the basin." This is manifestly absurd in view of the fact that he had already been traveling half an hour and had still, according to his statement, about a mile and a half or two miles to go.

Plaintiff and her sister had explained to Mr Jordano that they were not interested except in property near the city, and which could be reached in a few

minutes, and it is very evident that the defendant was most anxious to convince these ladies that the property he wanted to show them was only a few minutes' ride from the center of the city. In view of all the circumstances, it is our opinion that the defendant has not successfully borne the burden of proving that his being on the wrong side of the road was necessary; nor has he been able entirely to overcome the testimony of plaintiff and her sister, as to his speed.

If he was negligent and his negligence had any causal connection with the resulting accident, he is not relieved from liability to his guest riding with him by the showing of negligence on the part of some third person.

Friedrichs & Dupas were also made defendants but the trial Judge rendered judgment in their favor on the ground that Jordano was not their agent, but was an independent real estate broker, and that they were not responsible for his negligence. No appeal was taken from that part of the judgment; consequently that question is not before us.

The only matter remaining for determination is the amount to be awarded plaintiff. She lost two molar teeth and one of her front teeth was cracked. It was at first thought that her skull was fractured. Quite a number of stitches inside her mouth and around her lips were necessary. She was compelled to remain in bed for twelve days. Her speech is to some extent still interfered with.

We believe that twelve hundred dollars, the amount allowed her in the court below, is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, at the cost of appellant.