## STELLY v. PRATHER et al.
### No. 1840.

Court of Appeal of Louisiana. First Circuit.
June 14, 1938.

Dubuisson & Dubuisson, of Opelousas, for appellants.

Lewis & Lewis, of Opelousas, for appellee.

DORE, Judge.

This suit is for damages on account of personal injuries which plaintiff claims to have received on October 11, 1936, while riding as a guest in the automobile of his brother, Ed Lucius Stelly, when the car in which he was riding collided with a log truck owned and driven by defendant Prather a few feet south of the intersection of Main and Church Streets, in the City of Opelousas. The amount of damages claimed is $4575 itemized in the petition. The Travelers Insurance Company, the insurance carrier on the truck is joined with Prather in the suit.

The defendant Prather was coming south on Main Street, about ten o'clock in the morning, and the Stelly car in which plaintiff was riding was going north on the same street. At the point of collision, Main Street is 40 feet wide and is paved from curb to curb; but from the south line of the intersection of Church Street north, Main Street only has an 18 foot concrete pavement slab with gravel shoulders on each side. Church Street is graveled, with a width of approximately thirty feet from shoulder to shoulder. A center black line runs down Main Street; and after it passes the south line of the intersection of Church Street, other lines mark off the curb side of the street on both sides, thus making four lanes of traffic, the two lanes next to the curb on each side being 11 feet wide and the two center lanes being 9 feet each.

The negligence charged against Prather is that he was driving his truck down Main Street at an excessive rate of speed, was not keeping a proper lookout, did not have his truck under proper control, and drove over on his left side of the center line and struck the car in which plaintiff was riding some fifteen feet south of the intersection of Church Street, throwing plaintiff out of the car and causing the injuries for which damages are claimed. Defendant made a general denial of negligence, and alleged that the sole cause of the accident was the act of Ed Lucius Stelly, the driver of the car in which plaintiff was riding, in pulling his car to the left at a point ten or fifteen feet south of the intersection of Main and Church Streets in front of Prather's approaching truck with the intention of turning into Church Street in a westernly direction ahead of Prather's on-coming truck. And in the alternative, and in case it is held that Prather was guilty of any negligence which contributed to the accident, defendant avers that the driver of the Stelly car was an inexperienced and incompetent driver to the knowledge of plaintiff, and that he was guilty of contributory negligence in riding in a car with this inexperienced and incompetent driver at the wheel.

There was judgment below in favor of plaintiff and against both defendants for the sum of $3080. Defendants have appealed.

At the outset, it may be stated that the defendants have abandoned their plea of contributory negligence on the part of plaintiff in riding in a car driven by an inexperienced and incompetent driver. It therefore follows that if the accident was caused by the combined negligence of Prather and Ed Lucius Stelly, they would be joint tort-feasors, and, as to the plaintiff, liable to him in solido. Consequently, if we find that Prather was guilty of any negligence that contributed to the accident, he and his insurer would be liable to plaintiff for the damages sustained by him in the accident.

The trial judge found that defendant Prather was guilty of negligence in all particulars charged in the petition. He found that Prather was travelling around 35 miles per hour, whereas the city ordinance fixes the speed limit at 20 miles per hour; and provides that, regardless of the speed limit, under the particular circumstances of the case, the speed at which

the vehicle is operated shall not be such as to endanger other vehicles, persons or property.

■ The defendant Prather and his witnesses claim that he was going 20 to 25 miles per hour. The witnesses for plaintiff place the speed of the truck at from 35 to 50 miles per hour. Some of plaintiff's witnesses merely state that the truck was going fast. The impact with the Ford car in which plaintiff was riding took place some 15 or 20 feet south of Church Street crossing. The distance that the truck travelled after the collision is disputed, and it is impossible to fix the distance from the evidence. However, it is safe to say that it travelled more than 15 feet after the impact as estimated by Prather and more than 10 feet as fixed by Prather's brother who was riding with him. But it is hardly probable that the truck went 75 to 100 feet after the collision as some of plaintiff's witnesses estimate. According to Prather, he could stop the truck and trailer going at 25 miles per hour in about 20 feet. It is manifest from the whole evidence and from the physical facts that the truck went considerably more than 20 feet after the impact and stopped near or against the curb on the right hand side.

All of the testimony shows that the Stelly car was going from 10 to 15 miles per hour. Considerable damage was done to the left side of both the car and the truck. This fact, together with the fact that the truck went considerable distance after the collision, indicates that it was going more than 25 miles per hour. This speed was excessive in view of the city ordinance and the traffic conditions. There were at least two cars approaching from the opposite direction, a bicyclist who had just made the intersection and was travelling immediately in front of him in the same direction, and a church in the immediate vicinity in which the services were about to conclude. There were signs placed in full view warning motorists of the church zone.

■ The defendant Prather admits that he did not see the Stelly car until a split second before the collision. His brother sitting beside him saw the approaching Stelly car for some distance, and there is no reason why defendant Prather could not have seen it had he been keeping a proper lookout. A boy on a bicycle came into Main Street from the west on Church Street just as Prather approached the intersection. The boy on the bicycle turned to his right and rode along near the curb on the west side of Main Street where he was struck by the truck after the collision something over 25 feet from the intersection. The boy was injured and sued these same defendants for damages in a companion suit consolidated with the present suit. Prather saw the boy on the bicycle, but he says that he did not change his course as he continued to travel on his right side of the road.

This leads to another important charge of negligence: That Prather swerved to his left just before the collision and crossed over the center black line, and then suddenly realizing the danger of a collision with the Stelly car, pulled back to the right, whereupon the Stelly car struck the left side of the truck as it turned to the right. The evidence on the point is very conflicting and leaves room for doubt. According to Prather and his brother and two other men sitting at a filling station on the northwest corner of the intersection, the truck did not change its course, but continued down the street well on its right side. These witnesses claim that the Stelly car made a sudden turn to its left just before reaching the intersection for the purpose of passing another car just ahead, or for the purpose of turning into Church Street to the left.

A few days after the accident, Prather signed a statement at the request of counsel for plaintiff in which he says, among other things:

"Before reaching the intersection of Main and Church Street in the City of Opelousas, I was proceeding at a rate of speed of approximately 25 miles per hour, and before reaching the intersection in question I observed a person on a bicycle travelling on the west or my right-hand portion of the paved strip. I had my attention focused on this person and was intent in not striking him. Being thus absorbed by watching the bicyclist I failed to observe another automobile coming toward me and in an opposite direction. The first thing I knew I had collided with the other car. I did not see it until just a moment before the collision, and I must admit that at the time I struck this other car I must have been over the center black line, that is to say, a portion of my vehicle was on the east strip, or east side of the center black line. Just before striking the other automobile I saw it and veered to my right. This action cut the front of my truck to the right

and I hit the other car with the left side of my cab."

On the trial of the case, Prather gave a different version of the occurrence. He denied that his truck got over on the left side of the black line but claimed that he drove entirely and continuously to the right of the center line. The two men at the filling station put the truck from four to six feet to the right of the center line, which is hardly possible as in that case, the right wheels would have been off of the paved strip until the truck crossed the intersection. However, the statement as given by Prather is more logical than his testimony in that it is but logical to say that when he perceived the bicyclist in the intersection in the act of turning south on Main Street for him to have his attention on the bicyclist than anything else and to take precautions not to injure him.

Plaintiff and the driver of the Stelly car state that the truck crossed the center line just before the impact. Another witness testified to skid marks of the Stelly car on its right side of the street some 12 inches to the right of the line. Another witness who was following the Stelly car about three-fourths of a block in the rear, testified that the truck swerved to its left just before the collision, and its rear wheels at least came across the center line. When this testimony is considered in connection with the practical admission made by Prather in his statement, it can hardly be said that the trial judge manifestly erred in his finding that the truck did swerve to the left across the center line when it was struck by the Stelly car.

■ The preponderance of the evidence shows that the Stelly car was turning to its left for the purpose of passing the slowly moving car in its front, this front car being close to the curb and well within the curb lane marked by a line. There was ample room for Stelly to pass this car without going to his left of the center line in this 40 foot paved street. There was a space on the other side of twenty feet; and as it is shown that the bicycle was within two feet or so of the curb going south, the following truck had a space of between 15 and 18 feet in which to travel without crossing the center line.

But admitting that the truck did not come over the left of the center line, and that the Stelly car was pulled over to the left of the center line when struck, the situation would still be such as to make the excessive speed of Prather and his failure to keep a proper lookout contributing causes of the accident. If Prather had been going 20 miles per hour or less and had seen the Stelly car as it was turning to its left to pass the other car, or to turn into Church Street, obviously he could have stopped his truck, as he says that he could have stopped it within fifteen feet going 20 miles per hour. Clearly he could have seen the Stelly car turning to its left more than fifteen feet ahead had he been looking, and in that case he could have either stopped his truck or pulled it to the right as he had ample room. So that Prather's negligence was the sole cause of the accident if he swerved his truck to the left of the center line, and his negligence was a contributing cause if he did not cross the center line but failed to see the Stelly car in time to stop or avoid the other car, and was going too rapid a speed to stop in the emergency created by the Stelly car. In the former case he was the sole tort-feasor, and in the latter a joint tort-feasor with the driver of the Stelly car for which plaintiff was not responsible. As to liability, the judgment of the lower court is therefore correct.

■ However, the amount of damages is somewhat excessive. Plaintiff's injuries consisted of a bruise over his right elbow, bruises over his right ankle, superficial bruises over the scalp, back and chest, and a sacroiliac sprain, all of which had healed at the time of the trial, except the sacroiliac sprain, and subjective symptoms of pain in the chest. The sacroiliac sprain is the most serious. It appears from the medical testimony that this injury may continue for as long as a year from the date of the accident. The bruises and lacerations were painful but not serious. Plaintiff was in bed for a week and was visited daily by his doctor. After that, he came to the doctor's office about once a week for treatment. At the time of the trial, some ten months after the injury, the doctor advised plaintiff not to engage in hard work.

It appears that plaintiff was fairly successful as a truck farmer, but the exact amount of loss he has sustained because of his inability to do manual labor cannot be determined with any degree of accuracy. But taking this item into consideration, together with his future loss of earnings, pain and suffering, etc., an award of $2000 is sufficient. He has proved medical bills to the amount of $80.

For these reasons, it is ordered that the judgment appealed from be and is amended by reducing the amount of $3080 to $2080, and as thus amended it is affirmed. Plaintiff to pay the cost in this court, defendant to pay the cost in the lower court.