ROHLEDER v. TOYE BROS. YELLOW CAB CO. et al. *

No. 17039.

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1939.

———◆———

*Rehearing denied Feb. 6, 1939.

Alfred D. Danziger, of New Orleans, for appellant Toye Bros. Yellow Cab Co.

Adam H. Harper, of New Orleans, for appellants Mr. and Mrs. Lawrence Jobe.

Bentley G. Byrnes and C. Paul Barker, both of New Orleans, for appellee.

JANVIER, Judge.

On July 20, 1937, shortly after noon, a taxicab of Toye Brothers Yellow Cab Company, a partnership, and a Chevrolet sedan belonging to Lawrence Jobe and operated by Mrs. Jobe, came into collision at the corner of Seventh and Constance Streets, and Reverend Joseph Rohleder, a passenger in the taxicab, received physical injuries. Father Rohleder, claiming that the accident had been caused by the joint negligence of the drivers of the two automobiles and that Mrs. Jobe was, at the time, operating the Chevrolet in the interests of the community and as agent for her husband, head and master of the marital community, filed this suit seeking solidary judgment against the partnership, Toye Brothers Yellow Cab Company, and the individual members thereof, Mrs. Lawrence Jobe, the operator of one of the automobiles, and Lawrence Jobe, the husband of Mrs. Jobe.

In the District Court there was judgment in favor of the plaintiff for $1,301 solidarily against all defendants except Mr. Jobe and the suit as against him was dismissed. From this judgment Toye Brothers Yellow Cab Company and the individual members of that partnership and Mrs. Jobe have appealed. Plaintiff has not appealed from the dismissal of his suit against Mr. Jobe, with whom, therefore, we are not concerned.

The taxicab was on its way up Constance Street and the Jobe Chevrolet was coming in Seventh Street from the direction of the river toward the lake. On the intervening corner of the intersection there was a brick structure which extended to the property lines of both streets.

It is charged that the driver of the taxicab and Mrs. Jobe were both negligent in the following particulars:

"A — Each was driving at a fast speed and in a reckless and careless manner, and nei-

ther decreased their speed upon approaching and entering the intersection.

"B – Each saw the other in time to have avoided the collision by stopping or swerving clear of the other car; each failed to apply his brakes, or to do any act which would have avoided or reduced or minimized the impact, but, on the contrary, each, despite the fact that they observed the other, kept on at the same rate of speed up until the point of collision, * * *".

The taxicab was struck on its left side and, as a result of the blow and of the speed at which it was traveling, it crashed into a large post located on the upper lake corner, 12 feet above the sidewalk of Seventh Street, being damaged, apparently, more on its right rear side by contact with the said post than on its left side by contact with the Jobe car. It turned almost over on its right side and was leaning against the post after the accident.

Mrs. Jobe claims that she brought the Chevrolet to a stop as its front end reached the property line of Constance Street and that, as she did not see the approaching taxicab, she proceeded to cross, but that, just as she had entered the intersection, the taxicab, at high speed, dashed in front of her Chevrolet when she could no longer stop it.

It is contended by counsel for Toye Brothers Yellow Cab Company that Caravella, the operator of the taxicab, stated that he had proceeded up Constance Street at a speed of about 18 or 20 miles per hour until he reached a point about 12 feet from the intersection and had then reduced his speed to 8 or 10 miles an hour, and that he noticed the Jobe car approaching about 80 feet away and at what he deemed to be a speed which indicated that it would stop, or, at any rate, would not get into the intersection before he had crossed, but that it did not stop, and, on the contrary, proceeded on its way and struck the left side of his taxicab before he could completely cross the intersection.

Many witnesses testified and we find it impossible to reconcile the various conflicting and contradictory statements. But we reach the conclusion that neither driver took any reasonable precaution to ascertain whether there was any approaching vehicle on the intersecting street. Although counsel for Toye Brothers Yellow Cab Company maintains that Caravella the operator of the taxicab, saw the Chevrolet when it was 80 feet away and assumed that its speed was slow enough to permit his cab to pass ahead of it, as a matter of fact it appears from his own statement that he did not look until an instant prior to the collision, for, in the criminal court when he appeared as a witness against Mrs. Jobe, he testified as follows:

"Q. As a matter of fact, the first time you saw Mrs. Jobe is when you were about to collide with one another; isn't that a fact? A. Yes, sir.

"Q. And at the time you saw the Jobe car, the Jobe car was moving? A. Yes, sir.

"Q. And the Jobe car had proceeded into Constance Street? A. Yes, sir."

That Mrs. Jobe could not have looked carefully is evident because she did not see the taxicab. The evidence shows that in the car with her at the time, at her right, was a young child, who was probably standing up with his head near the windshield of the car. This, to some extent, may have obstructed her view in the direction from which the taxicab was approaching. But, even if she stopped when the front of her car was at the continuation of the property line, as she contends she did—and there is much evidence to contradict this—still she could not have seen the approaching taxicab because the intervening brick building would have obstructed her view. It was her duty to look in that direction because traffic ordinance No. 13,-702 C.C.S., in Art. VI, section 10, sub-section (a), gave to the driver of the taxicab superior rights since he was approaching from her right. But it did not give that driver (Caravella) the right to drive at high speed into the intersection and did not relieve him of all obligation to look for other traffic as he approached the intersection, for the said ordinance, in Art. V, section 3, sub-section (b), provides that it shall be prima facie lawful for a driver approaching an intersection at which his view is obstructed, to proceed provided his speed does not exceed 15 miles per hour. That his speed at the time he entered the intersection was certainly more than at least 15 miles per hour, we have no doubt. Father Rohleder, plaintiff, the passenger in the taxicab, could not testify as to the exact speed, but said that, after the taxicab had been somewhat slowed down—about 100 feet before reaching the crossing—the chauffeur had accelerated his speed and that, at the time it reached the intersection, the taxicab was moving at a speed which he considered "fast".

Lloyd Lagasse said that when the taxicab passed him—he was some 30 or 40 feet from the crossing—it was traveling between 16 and 20 miles per hour. While he did not look at it after it passed him, his evidence shows clearly that it could not have reduced its speed, and his testimony, considered in connection with that of Father Rohleder, shows that it must have exceeded 16 or 20 miles an hour when it entered the intersection because Father Rohleder, as we have said, stated that it increased its speed as it neared the corner.

Caravella's own testimony is most unsatisfactory and, when considered in connection with the statements made by him in the Criminal Court in the matter of State of Louisiana v. Mrs. Lawrence Jobe, it shows an evident desire to make whatever statements will best serve his interests. Mrs. Jobe's testimony is also unsatisfactory and convinces us that she did not look and entered the intersection without stopping.

The record is voluminous, containing the testimony of more than forty witnesses. After reading the statements of all of them, we conclude not only that the conclusion reached by the District Court was not obviously incorrect, but that it is apparent that both drivers were at fault.

As to the injuries sustained by Father Rohleder, we reach the conclusion that they were not serious. There is much conflicting testimony but it is evident that Dr. Nix believed that they consisted principally of bruises, contusions and brush burns. There was, as the District Judge found, a cut on the scalp, which required sutures, and, while Dr. Nix seemed to feel that there was quite a possibility of concussion, there was no serious result therefrom. There was a fracture of the metacarpal bone of the little finger of the right hand, but it is shown that this healed in a very short time and that no permanent effects would follow. As to the loss of time of Father Rohleder, the record shows that he receives $100 per year and, therefore, he suffered no serious financial loss since we assume that he continued to receive this modest remuneration during the period of his disability. The amount allowed, including medical expenses, is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed.

Affirmed.