At about 12:20 o'clock on the morning of March 19th, 1939, there was an intersectional automobile collision at the corner of Olivier and Alix Streets in Algiers, that section of the City of New Orleans lying on the west bank of the river. Miss Rosemary Wagner, then 16 years of age, was a guest passenger in an automobile owned and driven at the time by Francis LeMoine, a young man then 21 years of age. The other car was owned and driven by Joseph Susslin. Miss Wagner sustained personal injuries, and her father, on her behalf, alleging that Susslin was at fault, claims of him $2,300. On behalf of his minor daughter, and, in his on behalf, prays for judgment for $125, the amount of the bill of the doctor, who was called upon to treat his said minor daughter.
Susslin denies that he was in any way at fault, averring that the sole cause of the accident was the negligence of young LeMoine, and he calls LeMoine in warranty, praying for judgment for one-half of such amount as he may be required to pay to Wagner and to his daughter.
There was judgment in favor of Wagner for the use and benefit of his daughter in the sum of $600, and for Wagner, in his own behalf, for $125. Susslin has appealed. Wagner has answered the appeal praying that the amount awarded for the use and benefit of his daughter be increased to $2,300 as originally prayed for. The record does not show that action was taken on the call in warranty made by Susslin on LeMoine.
The charges of negligence made against Susslin are that he approached the intersection *West Page 625 
"at about 30 miles per hour" and that he "did not slacken his speed upon approaching the intersection." The LeMoine car was on Olivier Street going toward the river, and the Susslin car was on Alix Street going in a down river direction, so that as the two cars neared the intersection, the LeMoine car approached it from Susslin's right. Alix Street is a two-way thoroughfare and Olivier Street is a less used, one-way street, vehicles being permitted to use it only towards the river as LeMoine was doing.
The LeMoine car entered the intersection first and was struck on its left side near the front by the front bumper and the fenders of the Susslin car, which car after striking the other veered to its left and proceeded to the curb. The LeMoine car was turned over on the sidewalk on the lower river corner. Shrubbery and a building partially obstructed the views of the two drivers. Susslin claims to have been driving at about 15 miles per hour and LeMoine says that his speed was even slower, about 10 miles per hour. The right of way was with LeMoine since he was approaching from Susslin's right. City Ordinance C.C.S. 13702, Art. VI, section 10, subsection (A); see Rohleder v. Toye Bros. Yellow Cab Co., La.App., 185 So. 540.
Two friends of Susslin state that they were in his bakery on the next morning, and that LeMoine came into the bakery, and in their presence discussed the accident with Susslin. One of them, Foster Ryan, says that he heard LeMoine say: "I thought I could beat you across", and the other, Miss Katie Essinger, says that LeMoine said that he "saw Mr. Susslin coming, and that he thought of stopping, and he couldn't, * * *".
LeMoine denies that he made either statement and says that when he saw Susslin on the morning following the accident there was no one else present, and that at that time Susslin "offered to pay me for my damages." Both LeMoine and Miss Wagner state that they saw the Susslin car when it was about a half a block away, but they knew that they had time to cross if the Susslin car was proceeding at a reasonable rate of speed.
Susslin says that he did not see the LeMoine car at all. We quote: "I did not see him at all until the accident happened."
Since Susslin admits that he did not see the LeMoine car at all, and since it is obvious that the LeMoine car was entitled to the right of way, it follows that Susslin was negligent in driving into the intersection. If his view was obstructed, it was his duty to stop or to drive so slowly as to make certain that if another vehicle was approaching on that street, he could stop in time to avoid striking it. It is not necessary that we consider whether LeMoine was negligent or not, if both were negligent, and the negligence of each contributed to the accident, then Miss Wagner is entitled to recover from either or from both. See Duvic v. Friedrichs Dupas, 9 La.App. 394, 120 So. 494; Antoine v. Werner, La.App., 172 So. 800; Stelly v. Prather, La.App., 182 So. 171; Battalora v. Carnahan Creamery, La.App., 157 So. 612; and Bijou v. Long, La.App., 199 So. 670.
When we come to consider the quantum, we find from the testimony of Miss Wagner's physician that he treated her for "contusion of the spine, contusion of the abdomen and shock." X-ray photographs revealed no bone injury "except that the bone was contused." Miss Wagner remained under the doctor's treatment until May 1st, 1939. The accident, as we have said, occurred on March 19th. The doctor prescribed a lombar sacro belt "that they use for injuries to the spine." Miss Wagner was also required to take physiotherapy treatments and massages for the spine. She, herself, states that she was disabled for about six weeks.
She also said: "I really did not think there was anything wrong with me, other than nervous shuck. However when I tried to bend over or tried to lift anything heavy I couldn't do it. Then I went to the doctor and he told me that I had suffered a contusion of the spine."
There is no evidence to show that she suffered a sacroiliac sprain.
Our attention is not directed to any case involving injuries similar to those sustained here. We think that the judgment should not be either increased or reduced.
The judgment appealed from is affirmed at the cost of appellant.
Judgment affirmed. *West Page 626