The plaintiff company was the insurer of a Buick automobile owned by the Louisiana Western Lumber Company, Inc., and as such insurer paid the owner the sum of $542 on account of damage to the car in a collision with a Mercury automobile driven by the defendant on Landry Street in the City of Opelousas on the night of November 30, 1940, between eleven and twelve o'clock. The insurance company took a subrogation from the owner of the Buick car of all its rights against the defendant on account of the accident and has brought this suit to recover from him the amount it was compelled to pay the Lumber Company. The trial judge rejected the demands of the plaintiff company, and it has appealed from the judgment which dismissed its suit.
The Buick car was being driven by a colored man named Sam Dupre with the consent and permission of some officials of the Lumber Company who had stopped over in Opelousas to visit the Cedar Lane Club on their return to their home in Lake Charles from a foot-ball game in Baton Rouge. The defendant was driving his car west on Landry Street on his way home, and Dupre was going east on the same street for the purpose of taking another colored man to his home in the eastern part of the City.
The negligence charged to the defendant Meadows is that he was driving at an excessive speed in a misting rain, without keeping a proper lookout and without having his car under proper control, and as a result thereof he swerved his car to the left across the center of Landry Street and struck the Buick car driven by Dupre coming from the opposite direction. The defendant denied any negligence on his part, and averred that the driver of the Buick car came over on his side of the street and struck the front left side of his car; that said Dupre either drove the Buick onto Landry Street from a side street to defendant's left and in making the turn into Landry Street got over in his lane of traffic, or else in proceeding down Landry street in a careless and reckless manner got over on defendant's side of the street and struck the left front side of his car. These alleged acts of negligence on the part of the driver of the Buick car were pleaded in the alternative by defendant in bar of plaintiff's right of recovery.
Landry Street is the principal thoroughfare through Opelousas and forms U.S. Highway 190 through the City. Pavy Street is a side street intersecting Landry from the south. The collision occurred just a few feet east of the intersection of these two streets in front of a store operated by Jack Hidalgo. At the southeast corner of the intersection is Cormier's garage, and a little further west on the south side of Landry Street is Moonlight Inn. This intersection is well lighted by a white way light and by the lights from the night club.
The principal question is one of fact, that is, on which side of Landry Street the impact of the two cars occurred. If the defendant was on his wrong side of the street when the cars collided, there can be no question of his negligence and that his negligence was the proximate cause of the accident. Where a collision occurs between two cars going in opposite directions, if the proof shows that one car was on its wrong side of the street, a prima facie case of negligence is made out against the driver of such car. See Armour Co. Ltd. v. Hicks Co., 18 La.App. 504, 138 So. 676.
And, of course, if the driver of the Buick car came over on his left side of the street and struck defendant's car either while he was turning into Landry Street from a side street, or while he was driving east on this street, his negligence was the proximate cause of the accident and would bar plaintiff's recovery. The alleged negligence of the defendant in driving at an excessive speed could not have been a proximate cause of the accident if he kept on his side of the street, as it is obvious that the collision would not have occurred had both cars kept on their respective sides of the street, regardless of their speed. The same can be said of the alleged failure of the defendant to see the Buick car until he was right on it, as it is obvious that his failure to see the other car had nothing to do with the accident if he was on his side of the street.
So the vital and controlling factor in the case is on which side of the street the *Page 539 
collision occurred. The proof of this vital point must be determined from the testimony of those who saw the accident and the physical facts as disclosed by those who visited the scene after the accident occurred. The testimony of the eye witnesses to the occurrence, as well as that relating to the physical facts, is in irreconcilable conflict.
Sam Dupre testified that he was returning with Joe Green from a visit to his cousin in the western part of town and came into Landry Street about two blocks from where the accident occurred; that he drove east on Landry Street on his right side of the street with his lights burning and his windshield wiper operating as it was misting rain; that he saw the lights of the other car coming about a block away on its right side of the street; that when the other car got within 25 feet of him it began to wobble from one side of the street to the other, crossing the center line two or three times, and then pulling back on its side of the road; that he thought the other car would straighten out, but when he saw that it was going to hit him, he pulled to the right and got about a foot from the black line on his side of the street when the car struck his car on the left side, and the two cars hooked together on their left sides; that when he got out of his car it was still facing east and was on his side of the street about a foot from the center line.
Joe Green, who was in the car with Dupre, could give no positive testimony as to which side of the street on which the Buick was being driven, nor its position after the collision. He did say that they entered Landry Street on the Boagni Road (wherever that is) and had been driving on the right side of Landry Street for some distance before the collision occurred, but he admits that he did not see the other car before the impact, as he had his head turned while he was getting some tobacco out of his back pocket, and admits that he does not know what side of the street Dupre was on just before the cars collided. He was knocked out in the collision and could not tell what the position of the cars was after the accident.
Arthur Richard, a special policeman, testified that he reached the scene of the accident a few minutes after it happened and found the Buick facing in a northeasterly direction at an angle of about 45 degrees across the pavement and hooked into the other car on their left front sides; that the Mercury car was facing southwest with its radiator and bumper projecting about two feet over the center line, and the Buick was over on its side of the street about two feet from the center line. Another policeman named Mizzi was with Richard at the time and was still on the police force at the time the case was tried. Why this policeman was not called to testify on the much disputed question of the position of the cars after the accident is not explained in the record.
The defendant was rendered unconscious by the impact and could not testify as to the position of the cars after the collision. He testified that he was driving on Landry Street at a speed of about 25 miles per hour on his proper side of the street and did not see the other car until a moment before the accident and when it was within five feet or so from him. He denies that he ever got on his wrong side of the road. He admitted making a statement to an insurance adjuster a few days after the accident that he was going about 35 miles per hour, but explains that he told the adjuster he did not know how fast he was going, and the adjuster suggested that it was not over 35 or 40 miles per hour, whereupon the adjuster put in the statement the speed of 35 miles per hour to which defendant did not object as he thought the case had been settled, and the adjuster stated that he only wanted the statement for his company.
Five witnesses, George Daigle, C.C. Robinson, Ambrose Coussen, Jack Hidalgo and R.J. Cormier, testified that they went to the scene of the accident a few minutes after it occurred and found the left front part of the Buick car projecting over on its left side of the road and hooked into the other car. These witnesses testified very positively that defendant's car was on its right side of the street and the left front of the Buick was projecting over the black line for a foot or more. Three of these witnesses testified that they observed the tracks of the Buick from the dirt and gravel off the wheels, and that these tracks indicated that the Buick had come into Landry Street from the side street on the south just west of the point of impact, and these tracks led up to where the Buick stopped after the collision.
It will thus be seen that on the vital point as to the side of the street on which the collision occurred, the testimony of *Page 540 
the driver of the two cars is in direct conflict, and the testimony of the other eye witness, Joe Green, is of no value on this point because he admits that he does not know how the accident happened, nor which side of the street the Buick was on at the time of the impact. Assuming that the testimony of the drivers of the two cars on this point is cancelled by the conflict, we must rely on the position of the cars after the accident and the attending circumstances to determine this point. To hold that the plaintiff has proved by a preponderance of the evidence that defendant's car was hooked into the left side of the Buick on the south side of the street and that the Buick was entirely on its side of the street, we would have to believe the testimony of Dupre and the policeman Richard and entirely disbelieve or disregard the testimony of the five men who visited the scene of the accident shortly after it occurred. Surely, there is nothing in the record to justify us in throwing out their testimony and give it no probative value whatever. So far as the record shows these witnesses had no pecuniary interest in the case, and there is nothing to justify an inference that they were all mistaken or falsifying.
While the fact that a car is on its wrong side of the street after a collision is not conclusive proof that the collision occurred on that side of the street, yet it is a strong factor to be considered in deciding that point, where, as in this case, the other evidence on the question is conflicting. The situation is such that we can certainly not point out any manifest error on the part of the trial judge in his finding that the plaintiff has failed to prove with legal certainty that the accident was caused by the negligence of the defendant in getting on his wrong side of the street and running into the Buick automobile.
Learned counsel for the plaintiff cite the cases of Gardiner v. Travelers Indemnity Co., La.App., 11 So.2d 61, and Stelly v. Prather et al., La.App., 182 So. 171, where the plaintiff insurance company (or its affiliate) was condemned for damages because of the negligence of the driver of an insured automobile and truck in driving at an excessive speed thereby causing a collision. Those cases are entirely different from the present case — in fact, have no bearing whatever on the present case. In the Gardiner case, we found that the driver of the insured car ran into the side of a car which had pre-empted the intersection and was proceeding across at a lawful speed; that the excessive speed of the driver of the insured car in approaching the intersection was a proximate cause of the accident. Likewise, in the Stelly case the excessive speed of the driver of the insured truck was a proximate cause of the accident.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of plaintiff in both courts.