208 So.2d 761 (1968)
S.W. LEWIS, d/b/a Mid-State Trucking Company and James H. Gooch
v.
Dallas E. BROGDON.
Dallas E. BROGDON
v.
SWIFT & COMPANY.
No. 44807.
Supreme Court of Mississippi.
April 1, 1968.
*762 Cary E. Bufkin, and Satterfield, Shell, Williams & Buford, Jackson, for S.W. Lewis, d/b/a Mid-State Trucking Co. & James H. Gooch.
Barnett, Montgomery, McClintock & Cunningham, Jackson, for Dallas E. Brogdon.
Elizabeth Hulen and Watkins & Eager, Jackson, for Swift & Co.
*763 ETHRIDGE, Chief Justice:
This suit stems from a collision between two trucks on a highway in the State of Louisiana, and thus the substantive law of Louisiana applies to the rights of the parties. Dallas E. Brogdon filed this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against S.W. Lewis, d/b/a Mid-State Trucking Company; James H. Gooch, the driver of the Lewis truck; and Swift & Company. It was contended by plaintiff that Lewis and Gooch were employees of Swift & Company, not independent contractors. There were two trials of the case. On the first trial, the jury found for all three defendants, and a judgment was rendered thereon. However, the circuit court sustained a motion for a new trial, principally on the ground that the verdict for defendants was against the overwhelming weight of the evidence.
On the second trial, the circuit court gave a peremptory instruction for plaintiff against Lewis and Gooch on liability. It also gave a peremptory instruction in favor of Swift & Company, holding that Lewis and Gooch were independent contractors, not employees of Swift & Company. The jury returned a verdict of $25,000 for Brogdon against Lewis and Gooch, and they have taken an appeal from a judgment based on that verdict. Brogdon has cross-appealed from the judgment in favor of Swift & Company. We affirm.

LEWIS AND GOOCH
On both trials the evidence was substantially the same. It is undisputed that Brogdon, driving a tractor and tandem trailer owned by Braswell Motor Freight Lines, was on his proper or right side of the road going north at the time of the collision. Gooch, driving the truck owned by Lewis and going south, was on his left or wrong side of the road in the process of passing another vehicle at the time Gooch collided with Brogdon. Gooch was manifestly negligent, and such negligence was a proximate cause of the collision. However, on their appeal Lewis and Gooch contend that Brogdon was guilty of negligence which contributed to the accident, and thus under the law of Louisiana such contributory negligence bars Brogdon's right of recovery. They assert that, although it was not yet full daylight and there was a light fog, Brogdon did not have his lights on and was not driving with reasonable care. Hence the key issue is whether Brogdon was guilty of such contributory negligence as to bar Brogdon's right of recovery under the law of Louisiana. We do not think he was. Moreover, we do not think that this was a jury issue. The circuit court on the second trial properly gave a peremptory instruction in favor of Brogdon against Lewis and Gooch.
Brogdon's version is as follows: He was on his way to Jackson, Mississippi. All lights on his vehicle were on, including headlights, the five marker lights across the cab of the tractor, and the eight or ten clearance lights on the trailer. When he reached Kentwood, Louisiana, there was some fog in spots, but it was mild and one could see through it for one thousand feet. He observed the Campbell 66 truck approaching from the north nine hundred feet ahead, but could not see any vehicle following the Campbell truck, which was a "large rig." The first time he saw the Lewis truck, driven by Gooch, was 75 to 80 feet away, when it suddenly turned from behind the Campbell truck into the northbound lane and veered across the highway. He was unable to avoid the collision. Brogdon was driving between forty to forty-five miles an hour and keeping a lookout ahead. The highway at this point was straight; from north to south it was just a slight grade. When the Lewis truck pulled out to pass the Campbell vehicle, it was traveling sixty to sixty-five miles an hour in a fifty-mile zone. It was daylight, the sun was up, and there was only a light fog in spots, through which there was good visibility. The point of impact was in the middle of a straight one-mile stretch of highway.
*764 Clyde Hughes, operating a nearby dairy farm, was standing in his barn near the highway when he heard the collision. He said that the accident happened around 5:15 a.m., and that the sun had been up for fifteen to twenty minutes. At the time of the wreck, one could see up and down the road for one thousand feet, but within a few minutes, the fog closed in and visibility was poor.
Gooch testified: He was familiar with this highway, which in this area is a straight-level stretch sloping gently toward the south, with three-fourths of a mile within which to pass. When he cleared the slight hill to the north, he could see to the south with his headlights. It was clear, so he pulled into his left lane to pass the Campbell vehicle. While trying to pass at a speed of 45-50 miles per hour, he was driving down the left side of the highway parallel to the Campbell truck for between one-half to three-fourths of a mile. It would have taken about another half-mile to complete the passing. With headlights on, Gooch could see 200 to 300 yards. Because he was on a straight stretch, he was in no hurry to pass Campbell. When the front of his truck reached the back of the Campbell tractor, there was "a heavy fog bank and this Braswell Freight Lines' truck coms [sic] out of that fog bank." The Braswell vehicle did not have any lights whatever on it that he could see. Gooch immediately turned his truck to the left, and Braswell hit Gooch's truck behind its cab.
Alton Ward, driver of the Campbell 66 vehicle, said that he was traveling between forty-five to fifty miles an hour and as he topped the rise to the north, Gooch began "to make his pass." There was just a slight trace of fog. However, visibility was good at that time, but when Gooch's truck moved to a point parallel with the rear of his tractor, the Braswell vehicle came out of a different type of fog than that which he had previously encountered. It was thick and heavy. Ward said that the Braswell truck did not have its headlights on, but that the marker and clearance lights were shining on the tractor and trailer.
The extent and quality of the negligence of Gooch must be measured in the light of all of these circumstances. Under either version of the method of passing, Gooch was guilty of substantial negligence causing the accident. If as Brogdon said Gooch pulled suddenly from behind the Campbell truck seventy-five to eighty feet away from him, Gooch was negligent in failing to determine whether he had sufficient open highway to pass and to see what he should have seen. On the other hand, accepting Gooch's version, he admitted that he had been encountering before the collision a "wispy" fog, like smoke. At the top of the hill to the north, he turned into the northbound lane to pass the Campbell truck. He had been driving on the wrong side of the road between one-half to three-fourths of a mile before the collision. Gooch estimated that it would have probably taken him another half mile to complete passing the Campbell vehicle.
In short, Gooch was in the process of passing the Campbell truck in the northbound lane of traffic in a large truck traveling at least at a speed of fifty miles an hour, probably more. He knew that he had been encountering some fog, although it was light. He actually saw the fog-bank in question, about 100 yards ahead of him, but he thought that it was just another light fog, and had no idea it was a heavy fog-bank. Nevertheless, he admitted that he saw it, and further, although it was just beginning to get daylight, when he got to the front of the Campbell trailer he could not see more than fifty to seventy-five feet ahead. Aware of these dangerous conditions, and in spite of them, he had continued driving down the northbound lane of the highway for a distance at that point of one-half to three-fourths of a mile, parallel to the Campbell truck. It is manifest that Gooch was grossly negligent, and that his negligence was the principal cause of the collision.
*765 In view of the peremptory instruction granted the plaintiff, we accept as true Gooch's statement that the Brogdon truck had no headlights on it. His witness, Ward, driving the Campbell truck, stated that, although Brogdon had no headlights, the marker and clearance lights were shining on the tractor and trailer.
Under the Louisiana cases, we do not think that Brogdon's failure to have his headlights on had any substantial causal relationship to the accident which resulted when Gooch's truck came barreling down the highway in the northbound lane. Brogdon was driving well within the speed limit. Before seeing the Gooch truck headed toward him on his side of the road, Brogdon was not under a duty to reduce his speed. A motorist on his right side of the road can reasonably assume that opposing traffic will not suddenly turn in his lane and across his path, or that a truck which had been in the process of passing an oncoming vehicle for one-half to three-fourths of a mile will suddenly appear in front of him on his side of the road. Brogdon's driving without headlights is seriously disputed, but accepting Gooch's version, the evidence shows that Brogdon was driving well within his lane of travel, and that he had a right to reasonably assume that no one would violate the rules of travel.
These conclusions appear to be in accord with the decisions of the Louisiana courts applying the substantive law of that state. Mississippi has a comparative negligence statute. Miss.Code 1942 Ann. § 1454 (1956). However, forty-five of the states retain the common law doctrine of contributory negligence. The harsh results of a strict application of that doctrine have been ameliorated through the use of the principle of proximate cause. Discussing this subject, Prosser states:
It is said by a number of courts that the plaintiff is barred from recovery if his own negligence has contributed to his injury "in any degree, however slight." On the face of it this means that any insignificant contribution, such as the addition of a lighted match to a forest fire, would bar the action. In all probability this is nothing more than a confusion of words, which fails to distinguish slight negligence from slight contribution; and what is really meant is that the plaintiff's negligence can be a defense, no matter how slight his departure from ordinary standards of conduct. The intent, in other words, is to reject any idea of comparative negligence. If so, it is a mistake peculiarly likely to mislead the jury when an instruction is given in such terms. Most courts, when the distinction has been pointed out to them, have held that the rules as to causation are the same for contributory negligence as for negligence, and that the plaintiff is not barred unless his negligence, of whatever degree, has been a substantial factor in causing his injury. (Prosser, Law of Torts § 64, at 431 (3d ed. 1964).
Mason v. Price, 32 So.2d 853 (La.2d Cir. Ct.App. 1947), an automobile accident case, candidly analyzed the Louisiana approach in contributory negligence cases, when it stated:
In this state, contrary to many other states, the rule of comparative negligence is not recognized; in fact, it is positively banned by the decisions of the Supreme Court. But, in a measure, by indirection, we have such a rule. It is found in the doctrine of proximate cause. The negligence of two persons may produce an accident yet the court will investigate to determine the proximate cause thereof in order to fix liability as between the parties. This is well illustrated in the present case. Granting that plaintiff was not as careful as it was possible for him to have been before attempting to cross the intersection, his fault in this respect, it is clear, was not a or the proximate cause of the collision that followed. (Id. at 855).
Broussard v. State Farm Mutual Auto Insurance Company, 188 So.2d 111 (La.3d *766 Cir.Ct.App. 1966), offers an example of the Louisiana Court's disposal of such a case. Plaintiff was injured on a foggy night when the automobile in which he was riding collided with a large truck and semi-trailer that turned left across its path. The suit between the plaintiff and the negligent truck driver was settled out of court, and plaintiff sued the insurance carrier of the driver of the car in which he was riding, contending that the driver was negligent in driving at a speed of forty to forty-five miles per hour when his visibility was impaired by fog, and that such negligence was a concurring proximate cause of the accident. Certainly any excessive speed of the driver of the car in which the plaintiff was a passenger (analogous to the alleged failure of Brogdon to have his lights on in the instant case) would be in some degree causally connected with the accident. It may not have been the "proximate cause" but it was a contributing cause (however slight) of the accident. The Louisiana court, however, held that "any negligence of * * * [the driver of the car in which plaintiff rode] was not a contributory cause of the accident." Id. at 116. The court observed:
When a motorist's visibility ahead is impaired, it is true, he should reduce his rate of speed to such extent and keep his automobile under such control as to reduce to a minimum the possibility of accident from collision with objects ahead. * * * Nevertheless, the degree to which the motorist must reduce his speed depends upon the particular circumstances, including the factual degree to which his visbility is obscured.
At any event, under our construction of the evidence any excessive speed by Knott had no causal relationship with the accident resulting when without previous warning the truck turned suddenly left across Knott's path at a time when Knott, at his speed of 40-45 mph, was unable reasonably to avoid the ensuing collision. * * *
Under these facts, any negligence of Knott was not a contributory cause of the accident. Prior to the sudden turn by Martin, Knott was under no duty to slacken his own speed or to take precautions to avoid colliding with the oncoming truck which he observed at the time in its own lane. A motorist on the right side of the road can reasonably assume that opposing traffic observed by him will not suddenly turn into his lane and across his path. * * * A motorist proceeding forward despite visibility obscured by fog or mist is not necessarily negligent if he collides with a vehicle which unexpectedly turns left across his path, * * * or with an oncoming vehicle which unexpectedly encroaches into his own lane of the highway. (Id. at 116-117)
While it should be noted that the Broussard case is not, technically speaking, a contributory negligence case, i.e., the plaintiff-passenger was suing the driver of the car in which he was riding when the accident occurred, the language of the court makes it clear that the same result would have been reached had the case involved the driver of the car's suit against the truck driver and the truck driver's assertion of the defense of contributory negligence.
Crow v. State Farm Mutual Automobile Insurance Company, 10 So.2d 105 (La.1st Cir.Ct.App. 1942), is analogous to the instant case. Around 6:30 p.m., when it was dark, Crow, driving his old truck, observed a white truck occupying its proper lane of travel approaching him from the opposite direction. When less than 500 feet away, the truck driven by the defendant Grand suddenly pulled out from behind the white truck and undertook to pass. There was a collision on plaintiff's side of the road. Clearly Grand was negligent, but he pleaded the contributory negligence of Crow, asserting that he had no lights on his old truck. Shortly before the accident, Crow had tried to connect the wires to one of his headlights. The trial judge held that one of them was burning at the time, although *767 it was quite dim. Affirming a judgment for plaintiff, the court said:
But aside from this, and assuming that there was insufficient illumination on the plaintiff's truck to afford a warning of its presence, it is difficult to understand how it was not made visible to the driver of the G.M.C. truck by the headlights of the white truck ahead of him as well as by his own headlights. The evidence is to the effect that both these trucks had good headlights burning at the time and if as he states, Grand was following the white truck by one hundred to one hundred and fifty feet, there is no reason why he should not have seen plaintiff's truck which was bound to have been in the beam path of the lights of both these trucks at one time or another, unless, as held by the district judge, he was not keeping a proper look-out ahead and failed to see what he should have seen. Had he been looking as he should, he would have seen plaintiff's truck before he did, and should have had ample time to get to his right side of the road again, back of the truck he had been following. His negligence was the real and proximate cause of the collision and he and his insurer were correctly held liable in damages to the plaintiff. (Id. at 108).
Thomas v. Stewart, 29 So.2d 604 (La. 1st Cir.Ct.App. 1947), is also pertinent to the factual circumstances of the case at bar. It involved a consolidation of two suits arising out of the same accident. One of the plaintiffs, Vernon Thomas, was driving a Ford truck in an easterly direction on a gravel road at a speed of ten miles per hour and the defendant, the driver of a school bus, was proceeding in a westerly direction on the same road when a head-on collision occurred between the two vehicles. At the time of the accident, a heavy fog made it impossible for an object to be seen at a distance greater than about fifteen feet. The collision took place in Vernon Thomas' lane of travel. Ephriam Thomas, the owner of the Ford truck, brought suit for the damages to his truck, and Vernon Thomas sued for his personal injuries. The lower court rejected the claims of the plaintiffs on the ground that Vernon Thomas was guilty of contributory negligence in driving the Ford truck without lights. The First Circuit Court of Appeals of Louisiana reversed, stating:
There is a controversy as to whether the lights on the Ford truck were burning. We do not believe that any importance attaches to this fact, for the reason that whether or not his lights were burning, Vernon Thomas had a perfect right to assume that no one would run head on with him while he was traveling well to his right. * * *
Under our findings of fact we conclude that this accident was caused solely by the negligence of the defendant in driving his bus, under the weather conditions then prevailing, in his left lane of travel, or a greater portion thereof, * * *.
The trial judge found, in his reasons for judgment, that Vernon Thomas was guilty of contributory negligence in driving the Ford truck without lights. The driving without lights is seriously disputed. However, admitting that Vernon Thomas was driving without lights, the evidence conclusively shows that he was driving well in his lane of travel, his right wheels being as close to the ditch as possible. He had the right to assume that no one would violate the rules of travel and that he was safe in proceeding forward on that assumption. We do not find any act of negligence on his part which contributed to the accident. (Id. at 605-606).
Felder v. Eagle Star Insurance Company, 79 So.2d 90 (La.1st Cir.Ct.App. 1955), involved a head-on collision in a heavy dust cloud in the plaintiff's lane of traffic. Defendant contended that plaintiff was contributorily negligent in that she did not stop sooner, put on her lights or sound her horn, but the court held that under the circumstances plaintiff had acted with reasonable *768 caution "and that she was under no duty to expect another vehicle approaching on the wrong side of the road."
Audubon Insurance Company v. Cunningham, 132 So.2d 657 (La.1st Cir.Ct.App. 1961), held that plaintiff was not contributorily negligent in entering a dense smog at a speed of fifty miles per hour, although he had encountered previously small clouds of smog, where the head-on collision occurred in his lane of traffic before he could effect his intention to apply his brakes.
The question in Louisiana is not whether the plaintiff was guilty of contributory negligence, but whether his negligence, of whatever degree, was a substantial factor in causing his injury. Only in those cases where the negligence of both parties is substantial, and one party's negligence is not much greater than the other, and it would be clearly inequitable to allow one party to recover fully from the other, would a Louisiana court, under that state's decisions, hold that contributory negligence bars the suit. See Annot., 67 A.L.R.2d at 118 (1959); 42 A.L.R.2d at 13 (1955). Illustrative of this approach are two other cases cited by counsel for Lewis and Gooch, in which the court concluded that plaintiff's negligence was so substantial as to bar his suit. Romero v. General Accident Fire & Life Assurance Corp., 199 So.2d 607 (La.3d Cir.Ct.App. 1967); Hardware Mutual Casualty Co. v. Marino, 141 So.2d 473 (La. 4th Cir.Ct.App. 1962). These latter cases are distinguishable and not applicable to the present litigation.
Moreover, in Louisiana, when a collision occurs in one of two traffic lanes, there is a presumption that the driver in the wrong lane was negligent, and it is said that he has the burden of showing that the accident was not caused by his negligence. Moreau v. American Cas. Co., 190 So.2d 133, 135 (La.4th Cir.Ct.App. 1966); Prioux v. Dressell, 109 So.2d 254, 258 (La.1st Cir. Ct.App. 1959); Smith v. Baker, 59 So.2d 714, 716 (La.2d Cir.Ct.App. 1952). Another case states that collision in the wrong lane makes a prima facie case of negligence against the driver of the car on the wrong side. Travelers Fire Ins. Co. v. Meadows, 13 So.2d 537 (La.1st Cir.Ct.App. 1943).
The duty of a motorist in passing an overtaken vehicle, defined by Louisiana statute, requires that the left side be "clearly visible and * * * free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken." La.Rev.St. 32:75 (1963).
See also 2 Blashfield, Cyclopedia of Automobile Law and Practice § 964 at 186 (1951); 8 Am.Jur.2d, Automobiles and Highway Traffic § 799 (1963); 60 C.J.S. Motor Vehicles § 326 (1949).
In summary, there is no doubt that Gooch was negligent, and we think that under the Louisiana authorities his negligence was the proximate cause of the collision and the injuries to Brogdon. Although aware that there had been patches of fog, somewhat light, nevertheless, Gooch was in the process of driving his large truck on his left side of the road for one-half of a mile before the collision. If he was not exceeding the fifty-mile per hour speed limit, he was certainly approximating it. Although aware that there was fog in patches, Gooch drove this considerable distance down the left side, electing to take the risk of an oncoming vehicle. Brogdon, on his proper side of the road, had the right to reasonably assume that opposing traffic would not encroach into his own lane of the highway, or unexpectedly turn across his path. Assuming insufficient illumination from Brogdon's truck, it is difficult to understand how it was not made visible by the headlights from both the Campbell and the Lewis trucks, as well as the marker and clearance lights of Brogdon. If Gooch had been looking as he should, he would have seen plaintiff before he did. All of these *769 factors and the Louisiana decisions warrant the conclusion that Gooch's negligence was the real and proximate cause of the collision, and that the circuit court was correct in granting a peremptory instruction for plaintiff against Lewis and Gooch.
Brogdon received severe injuries, and the jury's verdict of $25,000 was amply supported by the evidence.

SWIFT & COMPANY
Brogdon has cross-appealed from the peremptory instruction of the circuit court in favor of Swift & Company. He asserts that Lewis and Gooch were not independent contractors, but the agents and servants of Swift, and that therefore Swift is also liable.
The rules of the place of the wrong determine the difference between an independent contractor and a servant or agent. Accordingly, the law of the State of Louisiana is determinative of whether Lewis and his employee Gooch were also employees of Swift, or whether Lewis was an independent contractor. Restatement, Conflict of Laws § 387 at 474-75 (1934); Leflar, Conflict of Laws §§ 110-115 (1959); Scoles, Goodrich on Conflict of Law § 98 at 182 (1964); Reese and Flesch, Agency and Vicarious Liability in Conflict of Laws, 60 Col.L.Rev. 766, 775-79 (1960).
An examination of numerous Louisiana cases indicates that the Louisiana courts look essentially to the same tests and factors that the vast majority of jurisdictions, including Mississippi, consider in determining whether a relationship is that of master and servant or contractee and independent contractor. The leading Louisiana case is Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955).
At the time of the accident the truck of Lewis, doing business as Mid-State Trucking Company, was hauling boxes of iced chickens, shipped by Swift pursuant to a "Motor Carrier Trucking Agreement" between it and Lewis. Swift used other contract haulers in addition to Lewis under similar agreements. To carry out this contract, Lewis purchased and had available a truck with a dry-pack van specially made for hauling such products. The truck belonged to Lewis, who provided repairs and fuel. Swift gave Lewis a considerable amount of hauling business, so this truck was used exclusively to carry out the Swift contract. Between trips the truck was left at the Farmer's Market, near the Swift plant, for the convenience of both Swift and Lewis. For hauling these frozen chickens, Swift paid Lewis according to distance and weight. Gooch, the driver, averaged three interstate round trips a week. Since the time of delivery was an important part of the result to be achieved by the shipper, bills of lading given Lewis frequently stated the time for delivery of the products at their destinations.
Lewis was paid each week by Swift on the basis of the deliveries made during the week. The Swift check was payable to Lewis, and he in turn paid Gooch twenty percent of it for driving the truck. Swift did not control hiring and firing of the driver of the truck, but it expected Lewis to furnish a competent driver. Gooch had been driving this truck for Lewis, hauling shipments for Swift, since 1964.
The circuit court was correct in granting a peremptory instruction for Swift. Under the Louisiana cases, the relationship between Swift and Lewis would be that of shipper and independent contract carrier. The terms of the contract, the method and time of payment, ownership of the tools and equipment, the right to hire and fire vested in Lewis alone, the shipper looking to the results and not the details of accomplishing them, and the lack of any control or right to control by Swift of the details of performance of Lewis' contract with Swift support the foregoing conclusion. Moreover, assuming arguendo that there existed factual issues for definition of this relationship, they were submitted *770 to the jury on the first trial, and it found in favor of Swift. However, we do not reach that aspect of this case, as we think the circuit court on the second trial correctly rendered judgment for Swift.
Affirmed on direct and cross-appeals.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.