## LAPEZE v. O'KEEFE et al. *
### No. 14979.

Court of Appeal of Louisiana. Orleans.
Dec. 10, 1934.*

H. W. & H. M. Robinson, of New Orleans, for appellant.

Alvin R. Christovich, of New Orleans, and Hardin & Coleman, of Shreveport, for appellees.

LECHE, Judge.

Mr. Donald O'Keefe, one of the defendants herein, driving, with her consent, the Nash sedan belonging to his aunt, Miss Elizabeth O'Keefe, called at the home of plaintiff, Miss E. E. Lapeze, at 8335 Apricot street, New Orleans, on the night of February 25, 1932. Plaintiff and her aunt, Miss Nell Riddle, entered the car, which was driven to 924 Moss street, where Miss Riddle was in attendance as a trained nurse. After leaving Miss Riddle at her work, plaintiff and Mr. O'Keefe decided to take a ride and drove out Canal boulevard, thence to West End, and were proceeding in Pontchartrain boulevard when the accident occurred. Pontchartrain boulevard is a paved roadway approximately 40 feet wide, and going in the direction in which the Nash was proceeding; it is bordered on the left by the levee of the New Basin Canal, and on the right there is a graveled shoulder several feet wide which then slopes down 5 or 6 feet to the level of the land bordering the road. Upon reaching West End, there was in evidence small drifts of fog, and, upon passing the locks of the New Basin Canal, plaintiff cautioned O'Keefe to drive carefully. Thereafter several isolated fog banks were encountered, on approaching each of which O'Keefe slowed down the car, emerging almost immediately into the clear and accelerating. He was driving between 20 and 25 miles per hour, and, after passing through several of these small drifts in this manner, the car entered another fog bank which O'Keefe thought to be of the same nature as those previously encountered. This fog, however, was much thicker and more extensive, and, when completely enveloped in its midst, O'Keefe lost his sense of direction, and the right wheel of the car slipped off of the surfaced roadway onto the graveled shoulder of the road, which was several inches lower than the paved portion. He attempted to swing the car back on the road, but the right wheels caught on the side of the paved roadway. O'Keefe attempted to step on the brakes, but missed them, and the car rolled down the embankment and collided with a tree.

The evidence tends to show that the headlights on the car were somewhat dim, having lost much of the glare of new bulbs. We are not convinced that the brakes were defective. However, this is immaterial, as O'Keefe testified that he missed the brake pedal when he attempted to put his foot on it.

Plaintiff was seriously injured, and filed this suit for damages against defendants, Mr. Donald O'Keefe, the driver of the car, his aunt, Miss Elizabeth O'Keefe, the owner of

---

*Defendant's application for rehearing denied Jan. 7, 1935. Plaintiff's application for rehearing granted Jan. 7, 1935. Judgment modified on rehearing 159 So. 403.

the car, and the surety company. alleged to be carrying the liability insurance on the car. Judgment was rendered dismissing plaintiff's suit at her cost, and it is from this judgment that plaintiff has appealed.

The record clearly shows that plaintiff was the guest of defendant, Donald O'Keefe, and the legal effect of such relationship existed as between these two parties. The accident occurred in the nighttime in a heavy blanket of fog, and we refer to the case of O'Rourke v. McConaughey (La. App.) 157 So. 598, opinion rendered November 26, 1934, as to the obligations of the driver of an automobile in these circumstances. In that case we cited with approval the following language of Judge Odom in Pepper v. Walsworth, 6 La. App. 610: "When a driver finds that he is unable to see the road ahead of him, for any reason whatever, whether blinded by bright lights, smoke, dust, fog or for any other reason, it is his duty to at least bring his car under such control that it can be stopped in a moment in case of emergency, and in extreme cases it is his duty to stop."

Again in the case of Ward v. Donahue, 8 La. App. 335, the same author said: "It has been held repeatedly that the driver of an automobile in proceeding along a city street when he is blinded by the lights of another car or blinded by fog, smoke or dust, or when the windshield is so covered with rain water that his view ahead is obstructed, is guilty of negligence, and that it is his duty to look around the end of the windshield if that is the only way in which he can proceed in safety, and in extreme cases to stop."

■ It was plainly the duty of O'Keefe to proceed in such a manner that he could stop the car when he became blinded by the enveloping blanket of fog. His failure to do so constituted gross negligence. The evidence shows that, just prior to entering the fog bank in which the accident occurred, he had passed through several small drifts, emerging therefrom almost as soon as he entered, and that he thought they were all of the same character. He had no reason to anticipate this. Instead of being lulled by these signals, they ought to have served as ample warning of greater danger ahead. It must be borne in mind that there was involved no other vehicle or obstruction. The driver of this car did not have the last clear chance of avoiding the accident. His was the only chance of avoiding it, and it was caused solely and only by his negligence.

■■ It is contended that plaintiff's recovery is barred by her contributory negligence.

The record discloses that upon first observing evidences of fog she mentioned the fact and suggested that they return home. Thereafter she cautioned the driver to proceed carefully. At the time of the accident, she was fully relaxed, with her head resting on the back of the seat, enjoying the ride. There is no obligation on the part of a guest to maintain a steady and vigilant lookout, otherwise the pleasure and relaxation of motoring would be seriously impaired. Where recklessness or even negligence is apparent, it is the duty of the guest to protest, and, upon observation of danger, to call attention to it. The skill and care of the driver must be relied upon to a large extent. Plaintiff did all that could be required of her in observing the conditions and cautioning the driver to proceed carefully. Thereafter she relaxed and, as she had a right to do, relied on her host to return her safely to her home. She was guilty of no negligence.

■ There is no evidence upon which to base a judgment against Miss Elizabeth O'Keefe. She loaned her car to her nephew for his pleasure, and it is not even contended that the relationship of principal and agent obtained. It is unnecessary to decide whether a defective condition of the car would render her liable, as we are not convinced that the car was defective in any respect.

Article 3 of plaintiff's petition alleges the existence of a policy of casualty insurance covering Miss O'Keefe's car and the general terms thereof. Article 3 of the answer admits the existence of the policy, but denies all the other allegations. Neither the policy nor a copy thereof was introduced and filed in evidence; consequently we are in ignorance of the terms of the policy and without sufficient evidence upon which to render a judgment against the defendant casualty companies.

■■ Plaintiff asks for damages in the sum of $616.45 covering doctor bills, nurses' fees, medical, surgical, and hospital expenses; $2,000 for pain and suffering; $2,000 for mental suffering and contemplation of her crippled condition; $5,000 for loss of her arm resulting in permanent crippling and impaired capacity to earn her living and attend to her personal affairs, or a total of $9,616.45. Plaintiff is a young woman in attendance at normal school preparatory to becoming a teacher. She recovered consciousness shortly after the accident, being carried up on the road, where a passing automobile transported her to the Charity Hospital. Her right arm was badly mangled and she was bruised about

the face. She received preliminary treatment at the Charity Hospital, and, after some time, was taken to the Hotel Dieu, where her arm was amputated about 3 inches below the elbow. She was detained at Hotel Dieu for a period of ten days. On August 10th plaintiff was subjected to a second operation to remove bone growths, being detained at the hospital for a period of four days. In December a further operation was necessary to sever protruding nerves which had become embedded in the tissues. She suffered great pain because of this ordeal and, at the time of the trial, the stump was still sensitive. In the circumstances, we believe plaintiff clearly entitled to recover for all her necessary expenses in the sum of $616.45. She is entitled to the sum of $1,500 for pain, suffering, and mental affections due to her injury. For the loss of her arm resulting in a permanent impaired ability to earn her living and attend to her personal affairs and for permanent disfigurement, she is entitled to $5,000.

For the reasons assigned, the judgment appealed from, in so far as it dismisses plaintiff's suit as against Miss Elizabeth O'Keefe and the Constitution Indemnity Company of Philadelphia and the Lloyd's Insurance Company of America, is affirmed, and, in so far as said judgment dismisses plaintiff's suit as against Mr. Donald O'Keefe, said judgment is hereby annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of plaintiff, Miss E. E. Lapeze, and against defendant, Donald O'Keefe, in the sum of $7,116.45, together with all costs.

Affirmed in part; reversed in part.