The plaintiff, Cecil Cutrer, brought this suit against Luther Jones, operating as the Jones Truck Line, and his insurance carrier the Allied Underwriters, for damages in the sum of $76,000, on account of injuries which he received when an automobile which he was driving collided with a truck and trailer owned by said Jones. The accident occurred on U.S. Highway 90 some three miles west of Jennings on July 9, 1941, about 10:30 o'clock P.M. Cutrer was going west towards Lake Charles and the truck was traveling east towards Jennings. Plaintiff was driving a Chevrolet coupe owned by the Universal Oil Tool Company, he being in the employ of this Company and on a mission for it at the time of the accident. The truck with a trailer attached was being driven by Gabriel Hruzek, an employee of Jones and at the time on a mission for his employer.
The Aetna Casualty Surety Company, as the compensation insurance carrier for Cutrer's employer, paid Cutrer the sum of $3,400 for compensation and the sum of $603 for medical expenses on account of his injuries, which payments were made in a lump sum settlement under the *Page 861 
laws of Texas, the employer being domiciled and doing business in that state. The Surety Company intervened in this suit and joined plaintiff in his allegations of negligence seeking to fix liability for the injury and damage on the defendants, and asked to be reimbursed the amount paid by it out of any damages awarded Cutrer. The latter signed a subrogation in favor of the Surety Company for the amount of $4,003 and authorized it to intervene in his stilt against these defendants and agreed for the Surety Company to be repaid this amount by preference out of any amount recovered by him. As Cutrer does not contest this assignment made by him to the Surety Company, it follows that the defendants have no interest in contesting the application of any damages awarded plaintiff to the repayment of the Surety Company.
The negligence charged against the driver of the truck which plaintiff alleges was the cause of the accident consists of his excessive speed, driving on the wrong side of highway, failure to keep a proper lookout and failure to have the truck and trailer under proper control. On the other hand, the defendants contend that the sole and proximate cause of the accident was the negligence of Cutrer in driving around a curve at an excessive speed — not less than 60 miles per hour; — in getting over on the wrong side of the road and running into the truck and trailer; in driving with only one hand on the steering wheel, failing to keep a proper lookout and in failing to have his car under proper control. In the alternative, the defendants pleaded these alleged acts of negligence on the part of Cutrer as contributing to the accident and thus barring his recovery, even though the court should find that the truck driver was guilty of negligence. The defendant Jones coupled with his answer a reconventional demand against Cutrer for $1,473.16, for damage to and loss of the use of the truck, and certain other items not necessary to mention.
The trial court rendered a judgment in favor of plaintiff for the sum of $9,603, and gave judgment in favor of the intervenor for $4,003 to be paid by preference out of the amount awarded plaintiff. The defendants have appealed, and the plaintiff has answered the appeal, asking that the amount of the judgment be increased to $75,603.
There is little, if any, dispute as to the following facts: Cutrer was driving a car belonging to his employer, and at the time of the accident he was performing work in the scope of his employment; the driver of the truck was on a mission for his employer, Luther Jones; the accident occurred around 10:30 on a clear night; the plaintiff suffered the loss of his left arm and other minor injuries as a result of the accident; the truck, with a trailer attached, was loaded with oil field pipe forty feet in length, the truck and trailer with the load of pipe having an overall length of some 57 feet; the truck had single wheels on the front, with dual wheels on the rear, and the trailer attached to the truck also had dual wheels on the rear, the outside dual wheels on the truck and trailer extending out some six or eight inches further than the single wheels on the front of the truck; the car driven by the plaintiff came to a stop after the accident in or near a gravel road west of the point of collision on its right side of the road, some ten or twelve feet north of the pavement, and the truck came to a stop east of the point of collision with the front of the truck facing southeast and the rear facing northwest and almost, if not completely, blocking the road.
While there is some slight difference in the testimony and the contention of the parties as to just what part of the truck and trailer was struck by the plaintiff's car, we think the decided preponderance of the evidence shows that the left front part of plaintiff's car struck the left outside dual wheel of the truck. In other words, plaintiff's car missed the front or cab part of the truck and struck the rear part of the truck and trailer.
The important disputed facts are: (1) the nature and extent of the curve in the road where the collision occurred; (2) the position of the vehicles on the road at the time of the impact — that is, which vehicle was on the wrong side of the road; (3) the excessive speed and failure to keep a proper lookout of either or both drivers as contributing factors to the accident.
Our examination of the record convinces us that the collision occurred while Cutrer was rounding the inside of a fairly sharp curve in the highway. There are photographs of the road offered in evidence by the plaintiff which show a rather sharp curve in the highway, while a map offered in evidence by the defendants shows only a slight curve or gradual turn in the road for several hundred feet in the vicinity of *Page 862 
the accident. Without going into the details, we conclude that the collision did occur in a curve in the road, not quite so sharp as the pictures make it appear, but somewhat sharper than the map indicates. In fact, it seems to us that the abruptness, vel non, of this curve affords both a favorable and an unfavorable argument to the contentions of both plaintiff and defendants. If the curve is extremely sharp, as plaintiff seems to contend, then the claim of the defendants that he was negotiating this curve at an excessive speed (admittedly 50 to 55 miles per hour) has considerable force; and if the curve is a sharp one, the claim of the plaintiff that the long truck and trailer, rounding the outside of this curve, cut the arc of this curve, causing the rear wheels of the truck and trailer to come over on plaintiff's side of the road, is considerably strengthened. If, on the other hand, there was only a gradual turn in the road as claimed by the defendants, their charge of contributory negligence against plaintiff in driving at an excessive speed is weakened, as a speed of 50 to 55 miles per hour on a practically straight road could not be said to be excessive, nor even a greater speed than that; and if the road was practically straight, plaintiff's contention that the rear part of the truck and trailer cut the curve loses much of its plausibility.
The drivers of the two vehicles were the only eye witnesses to the collision. Another man named Trosclair was in the car with Cutrer, but he was asleep or dozing at the time of the impact and could give little positive testimony as to just how the accident occurred.
The testimony of the plaintiff as to how the accident happened may be summarized as follows: He was traveling at a speed of 50 to 55 miles per hour, and as he entered this curve in the road, the lights of the truck came into his view at a distance of 50 to 75 yards; the tall grass in the bend of the road blocked his view of the truck, but the lights from the truck were reflected on the side of the road; he was driving on his side of the road, two feet or so from the center line; when the truck came into his view, he dropped his eyes on the road to make sure that he was on his side of the road, and when he looked up an instant later, the truck was 20 to 25 feet in front of him and over on his side of the road two feet or more; he tried to pull to his right and miss the truck, and did succeed in missing the front of the truck, but the left front side of his car struck the left outside dual wheel of the truck, and his left arm struck the bolster of the truck tearing his arm almost completely off; at the time of the impact, he had cut his car the least bit to the right, his right wheel being within a foot or so of the shoulder; the truck pulled to its right when he got close to it which caused him to miss the front of the truck and strike the outside dual wheel extending further out than the front part of the truck.
The man in the car with plaintiff testified that the latter was driving about 50 miles per hour when he, the witness, laid his head back on the seat to get a little rest about a mile from where the collision occurred. He says that he dozed off but was not fully asleep when he heard the plaintiff exclaim, "Look out; a truck!" He raised up and there was kind of double lick, and the car then went into a kind of half spin and came to rest in a little gravel road north of the highway. Considerable testimony was elicited by defendants to show that this witness, Trosclair, had stated to several persons that he did not see the accident as he was asleep. This witness did not pretend to testify that he saw the position of the car and truck on the road when the impact occurred.
The driver of the truck testified that he was traveling about 30 miles per hour; that he had come from Houston, Texas, that day and had been on the road ten or twelve hours; that he kept on his side of the road and the plaintiff's car came over on his side of the road and struck the left dual wheels on the rear of the truck and trailer, knocking the outside wheel off the truck and bending back the axle, and bending the left wheels on the trailer and blowing out the tires. He says the plaintiff's car was coming toward him at a speed of 60 to 65 miles per hour; that the truck went about 60 feet after the car struck it and came to rest diagonally across the road.
The following facts and circumstances corroborate the testimony of the plaintiff that the collision occurred on his, or the north side of the road: As already stated, the collision occurred in a fairly sharp curve in the road while the driver of the Jones truck was negotiating the outside of the curve with a vehicle and its load measuring some 57 feet in length and with three sets of wheels to round the curve, the front wheels being 6 or 8 inches further in to the right than the outside dual wheels on the *Page 863 
left side of the truck and trailer. The outside of the curve was banked or elevated so as to make it easier for traffic rounding the inside of the curve to keep to the right. As we said in the case of Thibodaux et ux. v. Culotta et al., 192 So. 712, a truck and trailer rounding the outside of a curve has a tendency to cut the curve, causing the rear part of the trailer to veer further to the left than the front wheels of the truck while there is a tendency on the part of a person negotiating the inside of a curve, elevated or banked on the outside, to pull over toward his right. When we consider the length of the truck and trailer, it not only seems probable and natural for the rear part of the truck and trailer to take a short cut across the curve, but it appears to us that it would take rather careful driving to keep all of this long object entirely on the nine foot strip of concrete on the outside of the curve.
There is evidence in the record to the effect that debris, such as cakes of dirt which fall from under fenders of cars on a sudden jolt, were found on the north side of the pavement between the center line and the shoulder. While it is not definitely shown that this dirt and other debris came from plaintiff's car, yet as no other reasonable explanation is given as to where it came from, it is reasonable to conclude that the impact of the two vehicles at or near this point caused the debris to fall from one of them.
The fact that the truck and trailer came to rest after the collision with the trailer across the north part of the road and the truck found in a southeasterly direction on the south side is some evidence that the trailer was on the north side of the road when it was struck and continued on that side until it stopped some sixty feet further down the road. However, this is not a very strong circumstance as to the point of collision for the reason that cars take various courses after an impact, depending on their momentum, the force of the impact, direction from which the impact comes and the condition of the vehicle after the collision. The explanation given by defendants as to why the rear part of the truck and trailer came to rest on the north side of the road is very plausible, i.e., the fact that one of the dual wheels of the truck came off and the axle of the trailer was sprung and the tires blown out tended to pull the rear part of the truck and trailer across the road to the left.
The car driven by plaintiff did not cross over the highway, but was thrown slightly forward and to its right, stopping ten or twelve feet north of the pavement. This indicates that this car did not head into the side of the truck as defendants contend, as, in that case, the car would have been headed across the road or pulled to its left.
There is some effort made to prove that the driver of the truck was going more than thirty miles per hour as he claims. While there may be sufficient evidence to justify the conclusion that he was going faster than he claims, yet we do not think his speed was sufficient to constitute a proximate cause of the accident. He was guilty of negligence in driving the truck and trailer on the wrong side of the road around this curve, and this negligence was the proximate cause of the accident.
Rules 5 and 6 of Section 3 of Act 286 of 1938, Dart's Stat. 5210 and 5211, require the drivers of motor vehicles to drive on the right hand side of the road and provide that the drivers of vehicles proceeding in opposite directions shall pass each other to the right, each driver giving the other at least one half the main traveled portion of the road for a distance of at least 200 feet before meeting. The driver of the truck violated these wholesome rules of the road. The rule which requires the driver of a vehicle to stay on his side of the road in passing a vehicle coming from the opposite direction is one of the most important rules of the road, and its observance would no doubt prevent many collisions which occur on our highways, especially is this true of long and heavily loaded trucks rounding the outside of curves.
This brings us to a consideration of the alleged contributory negligence of the plaintiff. As already indicated, he was driving 50 to 55 miles around this fairly sharp curve, keeping to his side of the road on the inside of the curve. A witness testified that he had driven around this curve as fast as 70 or 75 miles per hour, but he would not say that was safe driving. Neither could we say that such a speed would be safe, however, as plaintiff was going only 50 or 55 miles per hour, we are not prepared to hold that his speed was excessive under the circumstances, nor that it was a contributing cause of the accident. *Page 864 
Plaintiff says that he saw the flare of the lights of the truck as it was coming around the curve when he was 50 or 75 yards from it; that he cast his eyes on the pavement to see that he was on his side of the road, and when he looked up an instant later he saw the truck on his side of the road 20 or 25 feet in front of him, and he endeavored to avoid it but could not do so. It is contended by defendants that plaintiff did not see the truck on the wrong side of the road as soon as he should have seen it, and did not use proper means to avoid the truck even though it was on his side of the road.
Since plaintiff was on his side of the road, he had a right to assume that a vehicle coming from the opposite direction would obey the law and stay on its side of the road, unless he saw or should have seen that the truck was on its wrong side of the road and could not get back on its right side before the vehicles met. We cannot say that plaintiff should have seen the truck on the wrong side of the road before he did see it, and if he had seen the truck on his side of the road at a greater distance than he did see it, he would have had a right to assume that the truck would pull back on its side of the road before passing him. The law on this point is succinctly stated in Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., vol. 2, p. 60, § 919, as follows:
"A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving."
Plaintiff admits that the elbow of his left arm was resting on the window sill of the car door, but he had both hands on the steering wheel. As he had the full use of both hands in steering the car, there was no negligence on his part in resting his elbow on the window sill.
We are asked to increase the award made by the trial court in favor of plaintiff. He was given $9,000 for his personal injuries, plus the medical expenses of $603. The principal injury sustained by the plaintiff was the loss of his left arm about six inches below the shoulder. He also had some cuts and bruises on his chest, stomach and leg, but these injuries were not serious and seem to have completely healed. His arm was badly mangled, and he suffered considerable pain and loss of blood before given medical attention. He was in a hospital for some twenty-two days after his arm was amputated, and was under the care of a doctor for about a month after he left the hospital. He feels pain and a burning sensation in the left arm, which the doctor states may continue for some time. Of course, he feels a certain embarrassment on account of the loss of his arm. He is a very promising young man, twenty-seven years of age, and at the time of the accident was making $200 per month, plus expenses.
The award is certainly not too large, but we have decided not to increase it as we are not in a position to say the award is insufficient. In the case of Morgan v. Lanz et al., 195 So. 128, we awarded a young man $8,000 for the loss of his arm. The young man in that case was not earning as much as the plaintiff in this case, but he had a somewhat longer life expectancy and also had a very promising future.
For the reasons herein assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed at the cost of defendants in both courts. *Page 865