Plaintiff's two-door Chevrolet sedan, 1935 model, being operated by him, collided with a large International truck of the defendant on a gravel highway, at about the hour of 5:00 p.m., April 9, 1948, one and one-half miles northeast of the Town of Dubach in Lincoln Parish. The sedan was so badly damaged that repairing it was not undertaken. Plaintiff suffered some physical injuries. In this suit he seeks to recover the value of his car and a large amount of damages allegedly suffered by him as a result of the accident.
Plaintiff was traveling northeasterly. The truck, driven by one Weldon Hinton, employee of the defendant, was going southwesterly. It was immediately preceded *Page 511 
by another truck of the same kind, also owned by the defendant. The left front end or part of the sedan came in violent contact with the rear dual left-hand wheels of the truck almost immediately below the front end of an attached long, flat float or trailer.
The petition charges Hinton, driver of the second truck with driving at an excessive speed on a curve; with following the first truck too closely over a dust obscured roadway and with operating the truck on the wrong (its left) side of the road at the time it struck plaintiff's automobile.
Defendant in answer admitted the ownership of the truck and that same was being operated in the course of its business; denied any negligence on the part of its driver; set forth that the second truck was following the first at a distance of 150 yards; that the accident came as the result of plaintiff's operation of his automobile on his left side of the road and finally charged plaintiff with contributory negligence in failing to keep a proper lookout; in failing to stop when his vision was obscured by dust; in operating his car with bad brakes and in driving on his left side of the road.
Trial of the case was begun before Judge E. L. Walker on the 23d of November, 1948. After plaintiff had testified, Prentiss Frazier, a Deputy Sheriff, was placed on the stand. In the midst of this testimony, trial of the case was interrupted and trial was resumed before Judge H. W. Ayres, who had been assigned to the Third Judicial District on account of the illness of the regularly elected Judge of that District.
When the trial resumed, the Deputy Sheriff resumed the witness stand. Later in the case, plaintiff was recalled to the witness stand and again testified concerning the happenings immediately prior to and at the time of the collision. The District Court rendered judgment in favor of plaintiff, fixing the damages at $4,739.36. The case is before us on appeal from that judgment.
There is a direct and irreconcilable conflict between the testimony of plaintiff and the driver of defendant's truck, particularly on the critical point as to which vehicle had crossed the center line and was on the wrong side of the road when the impact occurred. Plaintiff's testimony is that he was well on his right side of the road and in a cloud of dust made by the first truck when his passenger vehicle was struck. Mr. Hinton, driver of defendant's truck, testified that when he saw plaintiff's car, it was coming towards him. In answer to the question: "What did you do when you saw that car coming toward you?" he said: "Well, I whipped over to the right and dodged him with the front of the truck and the pulling wheels hung in the left front of his car." He testified that the automobile was not going fast, "but moving," and when asked on which side of the road the collision occurred, testified that there would have been three feet between the vehicles if plaintiff "had got over on his side." Early in his testimony, we note the following exchange of questions and answers between counsel for defendant and the driver of their truck:
"Q. On whose side of the road did that contact take place? A. Well, I was thinking he was on mine just a little bit.
"Q. He was on your side? What were you doing to avoid that accident, Mr. Hinton, if anything? A. Well, I was trying to get around him. I got the front of it around, but I couldn't get the back end."
Mr. Prentiss Frazier, Deputy Sheriff of Lincoln Parish, reached the scene a few minutes after the accident while the car and truck were still in the positions in which they rested after the accident. He testified that the skid marks showed that at the time the left wheel of plaintiff's car was struck, it was "on his side of the road." After the accident, he found plaintiff's car "crossways of the road," with the back wheels "near the ditch."
Mr. George Harris, another Deputy Sheriff who accompanied Mr. Frazier, testified that the Colvin car after the accident, rested at a forty-five degree angle with the road, with its back wheels between the shoulder and the embankment. *Page 512 
The accident occurred at a point on the road when defendant's truck had just completed the negotiation of a right turn. His vehicle was a truck-tractor unit with a large float. The road was narrow and it was the natural thing for the vehicle to have drifted over to its left side in making the fairly sharp right turn. We think he correctly testified that he was in process of turning to the right and turned his front wheels sufficiently to the right to miss plaintiff's car, but due to the fact that the rear wheels — in a turning movement — do not follow in the tracks of the front wheels, but follow a more outside arc, or due to the fact that plaintiff's car was still moving forward, or to a combination of the above two factors, the collision occurred.
Plaintiff is positive in his testimony that he was on his own right side of the road. The testimony of defendant's driver is less certain. The fact that he was uncertain as to the position of his vehicle with reference to the center of the road is shown by his statement to the Deputy Sheriff made at the scene of the accident that it was so dusty he couldn't see whether he was on his side or the "other fellow's." The Deputy Sheriff was positive in his testimony that the skid marks showed that plaintiff was on his own side of the road. We find that the record amply establishes that the impact point was on plaintiff's right side of the road.
Having found that the proximate cause of the accident was the encroachment of defendant's truck on plaintiff's side of the road, we consider it unnecessary to discuss the other acts of negligence charged in the petition.
The record does not bear out defendant's charge that the plaintiff was guilty of contributory negligence. There is some question as to whether plaintiff's car, at the time of the collision, had come to a full stop or whether is was moving forward at a slow rate of speed. We consider it unnecessary to decide that contested point. The record discloses that plaintiff, when his vision became obscured by the dust raised by the first truck, began to bring his vehicle to a stop and that the impact occurred on his own side of the road at a time when his vehicle was either at a complete standstill or moving forward at a very low rate of speed. In the face of this finding of fact, it follows that defendant has not established his charge of contributory negligence and therefore is responsible to plaintiff for such damages as were sustained by him.
At the time of the accident plaintiff was approximately sixty-five years of age. When asked as to the duration of plaintiff's disability as a result of his injuries and whether his prior condition was aggravated as a result of the wreck, Dr. M. T. Green made a reply which sums up the situation as to plaintiff's injury and disability, which we quote below: "His physical condition, his heart disease was not very much aggravated by the wreck but he was disabled from his heart condition be for the wreck, and it is safe to say that the disability was prolonged because he was laid up, he suffered a great deal of pain, all of which is not good for the heart condition that he had. That is what I mean by his disability being prolonged for a period of time — not too long; it's hard to estimate; he's old and disabled. I would say give him a reasonable period of 3 months — just an estimate — not based on anything except an arbitrary figure."
From examination of the testimony as a whole, we conclude that the award was excessive by $1,500. Therefore, the judgment appealed from is reduced to $3,239.36 and as amended, same is hereby affirmed. Costs of appeal to be paid by plaintiff; all other costs by defendant.
TALIAFERRO, Judge, dissents and submits the following in support thereof:
I regret my inability to agree with the majority opinion on purely questions of fact.
Had plaintiff's car been at stop or nearly so, close to the ditch, when the collision occurred, as he says, it could not possibly have rested in the position it was found to be in after the collision. There was not space enough between it and the combine *Page 513 
for this position to have been attained without further violent contact between the vehicles. Evidently the car was about the center of the road and was knocked to its left in order to have been in the position it was in after the collision. Had it been located at the time of the collision as he says, and had it been violently run into and contact between the vehicles been made, as is proven, the light car of the plaintiff would have been knocked angling backward and would have rested in the ditch. This did not happen.
Plaintiff admits that he did not see the oncoming combine until the collision occurred. He should have seen it before that time. Anyway, it is not a violent assumption to assume that when the leading truck and trailer passed him, he not seeing the other truck, pulled too far to his left and ran into the truck at an angle. The physical facts and logical deductions therefrom strongly corroborate the testimony of the truck driver as to how and where the accident occurred.
As to the signs on the gravel, testified about by a former deputy sheriff, I do not see how these could have been made by the tires of plaintiff's car. The deputy sheriff says the cuts were sharp. A tire when forced sidewise by violent impact, does not make sharp cuts in the gravel.
 On Rehearing