79 So.2d 90 (1955)
Mrs. Mabyn B. FELDER, Plaintiff-Appellee,
v.
EAGLE STAR INSURANCE COMPANY, E. D. Mitchell and Mrs. Lula Belle Mitchell, Defendants-Appellants.
No. 3959.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
Rehearing Denied April 22, 1955.
*91 Sanders, Miller, Downing, Rubin & Kean, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Dodd, Hirsch & Barker, Baton Rouge, for appellees.
TATE, Judge.
As a result of a collision in East Baton Rouge Parish on October 23, 1953, four suits were filed and later consolidated for trial. Three of said consolidated suits are on appeal to this court. The accident involved a 1950 Ford, operated by Mrs. Lula Belle Mitchell, wife of E. D. Mitchell, and a 1953 Ford operated by Mrs. Mabyn B. Felder, wife of Edwin G. Felder. The present is a suit by Mrs. Felder against the Mitchells and the liability insurer of the Mitchell car. On appeal to this court are two companion suits on behalf of passengers in the Mitchell car, against the Felders and their liability insurer, namely that of: (a) Mrs. Elizabeth Jennings Roe, mother-in-law of Mrs. Mitchell, reported hereinafter at 79 So.2d 93; and (b) that on behalf of Elizur D. Mitchell, an infant, through E. D. Mitchell, his father and natural tutor, subsequently reported at 79 So.2d 93. (Amicable compromise before trial between the Mitchell liability insurer and these latter two plaintiffs, passengers in the Mitchell car, eliminated this other insurer as a party to these latter two suits.) The fourth suit, that of Mrs. Mitchell against the Felders and their liability insurer, was dismissed after trial; no appeal was taken from this judgment.
The accident occurred at about 3 P.M. on the Rural Pride-Baywood Road, which is only somewhat gravelled. Coming from curves or turns at opposite ends thereof, the two vehicles involved herein collided on a reasonably straight east-west stretch of this road, from five to eight hundred feet in length. The road was dusty, due to a dry spell and the small amount of gravel on it, and as a result of the passage of a schoolbus proceeding ahead of Mrs. Felder in the same easterly direction (which before the accident passed Mrs. Mitchell coming from the opposite westerly direction); but although visibility was somewhat limited, both drivers testified they could see the way ahead, except at the immediate scene of the accident.
Immediately before the accident, a dense cloud of dust, far thicker than at other places in the road, had been formed covering a central portion of the aforesaid straight stretch. All witnesses agree that it existed, that it restricted visibility to five feet or less, forming what some of the witnesses described as a "terrible fog of dust" or an impenetrable "ball of dust" with defined edges like a curtain or wall. This apparently resulted from a gravel-less dust hole formed when the dust shoulders were dragged into the roadbed when the road was widened at this spot, hemmed in by dense foliage there on both sides of the road which inhibited dispersion of dust.
It is now conceded that Mrs. Mitchell was negligent in proceeding into the dense cloud of dust completely blinded. The principal issue before us is whether Mrs. Felder was contributorily negligent, for allegedly the same reason. If Mrs. Felder is contributorily negligent, she is barred from recovery in the instant suit; conversely, the plaintiffs in the companion Roe and Mitchell suits, subsequently reported, would presumably recover, not being barred by the negligence of Mrs. Mitchell, driver of the car in which they were passengers.
On behalf of Mrs. Mitchell, in effect admitting that she continued blindly into the dust cloud at a speed of about 20 miles per hour, it is claimed that the accident took place in the center or else at her (the eastern) end of the dust cloud, just after *92 she entered same, and also either on her side or on the middle of the roadway; but that even if it occurred on Mrs. Felder's side of the roadway, or as Mrs. Felder's car approached the western edge of the dust cloud immediately before Mrs. Felder's entry into same; that nevertheless, Mrs. Felder is contributorily negligent, and barred from recovery under such cases as Castille v. Richard, 157 La. 274, 102 So. 398, 37 A.L.R. 586; De Armond v. New Amsterdam Casualty Co., La.App., 1 Cir., 53 So.2d 474, and Second Circuit cases as Employers' Fire Insurance Co. v. Rodgers, La.App., 47 So.2d 404; McLelland v. Harper, La.App., 38 So.2d 425; Rosenbloom v. Mercer, La.App., 8 So.2d 328; Dominick v. Haynes Brothers, 13 La.App. 434, 127 So. 31, all holding both drivers negligent in allegedly similar circumstances, on the principle that it is negligent to continue the forward motion of a vehicle when vision is obscured to the danger point. Defendant further argues that Mrs. Felder is contributorily negligent in that, perceiving the dust as she rounded the curve 200 feet west thereof, she did not stop sooner, put on her lights, sound her horn, or otherwise warn traffic approaching through the dust fog of her presence.
We believe the testimony and physical evidence support the trial court's findings that the collision occurred at the extreme western (Mrs. Felder's) edge of the dust cloud, on Mrs. Felder's side (her right, or the southern half) of the road; that upon rounding the curve and seeing the dust cloud, she had pulled to her side of the road and reduced her speed, and upon perceiving the dust's density ahead, had applied her brakes for a full stop; that Mrs. Felder had nearly or completely stopped when the Mitchell car broke from the dust to strike her car head on.
We agree with the trial court's conclusion that under the circumstances Mrs. Felder acted with reasonable caution, prudence, and good judgment, and that she was under no duty to expect another vehicle approaching on the wrong side of the road, see Thomas v. Stewart, La.App., 1 Cir., 29 So.2d 604; Cutrer v. Jones, La.App., 1 Cir., 9 So.2d 859, blindly continuing with almost no visibility, Dixie Highway Express v. C. G. Galbraith & Son, Inc., La.Orleans App., 61 So.2d 218; Hogue v. Akin Truck Line, La.App., 2 Cir., 16 So.2d 366; Hutchinson v. T. L. James & Co., Inc., La.Orleans App., 160 So. 447. We do not believe a contrary conclusion indicated even if plaintiff on the proper side of the road, had been struck after entering the dust cloud while in the process of stopping upon perceiving her vision would be obscured, Colvin v. West Monroe Trucking Co., Inc., La.App., 43 So.2d 510.
Could some of the precautions suggested for plaintiff have avoided the accident (which is doubtful) or lessened the hazard thereof, the standard of care applied is that of the reasonably prudent motorist under the circumstances at the time of the accident and in the bustle of everyday life; not the standard of perfection which may be suggested by brilliant members of the legal profession or the judiciary, after meditation and considered study in the peace of their chambers.
As to quantum, plaintiff Mrs. Felder sustained fractures and a disclocation of her left hip, a partial separation of her right wrist, injury to her chest, and numerous contusions and lacerations about her face and body. She remained in her car in great pain for about forty-five minutes after the accident before an ambulance came. She was in the hospital for approximately four weeks, and while there her fractured hip was reduced, and traction applied to the leg for about four weeks because the rim of the hip joint was additionally fractured. Afterward, she spent more than three months on crutches. She was using an elastic bandage on her leg as of the date of the trial.
At the time of the trial, Dr. Moss Bannerman, orthopedic specialist, who had cared for her, testified there was still some swelling about her left ankle and foot when she was on her feet. He further testified that while the last x-rays of the hip joint showed no evidence of calcification and *93 residual disability, he was nevertheless continuing observation for a period of at least a year because approximately ten per cent of such severe hip dislocations result in a serious complication known as "aseptic necrosis" (when the blood supply reaching the pelvic bone is destroyed, and the bone softens, decays, and dies). Under cross-examination, Dr. Bannerman stated that as of the time of trial, the critical stage of the possible development of aseptic necrosis had not been reached, since the indicia thereof "usually don't show up until about a year after the injury".
The lower court awarded the plaintiff the policy limit of $10,000, and we certainly do not think this award is excessive.
For the foregoing reasons, the judgment appealed from is affirmed; appellants to pay all costs, including costs of this appeal.