ELLIS, Judge.
Shortly after 1 a. m. on December 21, 1957, Albert J. Cunningham, with his wife as a guest passenger, was travelling west toward Houma, Louisiana, on Highway 90, when he encountered smog produced by the burning of trash at the City of Houma’s dump located on the south side of the highway. Visibility was limited to not more than 10 feet and he slowed down to approximately four to five miles per hour. *658 A car being driven by Edward Barker, Jr. with Dale Rogers as a guest passenger, was proceeding in an easterly direction from Houma towards Raceland when it encountered this smog and entered same at a speed of approximately 50 miles per hour and in a “split second” or an estimated distance of 50 to 75 feet after entering the smog it collided with the Cunningham vehicle, which resulted in the latter being knocked backwards approximately 10 feet and coming to rest with its rear end off of the south side of the highway on the shoulder and sitting at an angle with its front end closer toward the west or the city of Houma but still upon the paved portion of the eastbound traffic lane. The Barker automobile proceeded in an easterly direction after the collision a distance estimated at 75 to 100 feet and came to rest with its front end pointing north and its right rear wheel at approximately the center line of the highway, thus leaving it crosswise of the westbound lane of travel with its rear end protruding slightly over into the eastbound lane of travel. A very short time after the Cunningham and Barker vehicles had come to rest,'one Pellegrin, travelling east toward Raceland, which was the same direction from which the Barker automobile had entered the smog, encountered the dense smog, applied his brakes, which took effect at about the right front wheel or end of the bumper of the Cunningham automobile, allegedly struck the Cunningham vehicle, skidded down the right or eastbound lane of travel and allegedly knocked the tail light off the right-hand rear side of the Barker automobile and came to rest at a total breaking distance of 135 feet from the Cunningham vehicle in its eastbound or proper lane of travel. Very shortly thereafter an automobile proceeding in a westerly direction on the wrong side of the highway or in the eastbound lane of travel, referred to as the Authement vehicle, collided head on with the Pellegrin automobile. We are concerned on this appeal with the two suits, which were filed as subrogation claims by collision insurers for damages to the insured vehicles arising out of this accident. Audubon Insurance Company was the collision insurer of the automobile owned by Edward W. Barker, Sr., and operated by Edward W. Barker, Jr., while the Resolute Insurance Company was the collision insurer of the automobile owned and operated by Donald P. Pellegrin. The defendant, Albert J. Cunningham, was insured against liability by his co-defendant, Grain Dealers Mutual Insurance Company.
The cases were consolidated for the purpose of trial and separate judgments rendered in each. After trial the District Court rendered judgment in favor of the respective insurers of Barker and Pellegrin for the property damage to their automobiles and it is from these two judgments that the defendants have appealed.
Although Mr. and Mrs. Cunningham both testified that they were travelling four or five miles per hour in their proper westbound lame of travel when they were struck by the Barker automobile, the preponderance of the evidence consisting of oral testimony and physical facts, is to the contrary and is conclusive proof that the Cunningham car was being driven in its wrong lane of travel- — the eastbound or south lane, which was the proper lane of travel for the Barker and Pellegrin automobiles. The testimony of Barker and his guest passenger to the effect that immediately after entering the blanket of smog, within a “split second”, before Barker could apply the brakes, although his reaction time had set in for doing so, the collision occurred in their lane of travel. Barker reasoned that although he could not see that it happened so quickly that he could not have gotten out of his lane of travel. Barker’s guest passenger testified that just before the wreck he saw the lights of the Cunningham car and that it was directly in their eastbound lane of travel with its left wheels off the south edge of the pavement and the right front wheels still on the pavement, and that the right front of the two automobiles collided. The picture of the Cunningham automobile reveals that it was struck on the right side *659 so as to bend the bumper back on the right, strip the fender and lights away from the main body of the car on the right and strike the right door. There is no picture of the Barker car in evidence, however, the testimony shows that it was struck approximately on the right side beginning somewhere around the middle of the grill and continuing down the right side. The contact was something in the nature of a sideswipe. In addition, the testimony of the trooper was that the debris showed that the impact between the cars occurred about the center of the right or eastbound lane of travel going towards Raceland, Louisiana, which was the proper lane for the Barker vehicle. He further testified that the dirt and debris came from the Cunningham vehicle as the Barker vehicle was somewhat new and clean, whereas the Cunningham vehicle had evidence of dirt or dried mud having been under the fenders. The trooper also testified that from the dirt and debris, which he considered the point of impact, he could trace the marks of the tires of the Cunningham car as it was knocked backward approximately 10 feet to its final resting place. The District Court accepted the testimony of the trooper, the guest passenger, and the physical facts as establishing the point of impact as being approximately at the center of the eastbound lane of travel. In this he was correct.
Cunningham was negligent upon entering this dense smog with visibility limited to 10 feet and not parking on the wide shell shoulders and, secondly, in operating his vehicle on the wrong side of the highway in the eastbound lane. We have no doubt that Mr. and Mrs. Cunningham were attempting to do all in their power to remain on their side of the road but evidently became confused in the lines designating the edge of the hard surface of the north and south lines which bounded the highway and the center line and actually thought that they were to the right or north of the center line when as a matter of fact they were ■to the south or left of the center line. The defendants have plead contributory negligence on the part of Barker, in that he had passed through several puffs or small clouds of smog and had continued at 55 miles an hour into the smog. Counsel for defendants relies upon McLelland v. Harper, La. App., 38 So.2d 425; Dominick v. Haynes Brothers, 13 La.App. 434, 127 So. 31; Employers’ Fire Insurance Co. v. Rodgers, La. App., 47 So.2d 404; F. Strauss & Sons v. Childers, La.App., 147 So. 536; Lapeze v. O’Keefe, La.App., 158 So. 36.
The facts on this point show that Barker and his guest passenger testified that prior to confronting the dense smog they had encountered several patches of fog, which hung somewhat above the highway and in no manner interfered with their visibility and that they were small patches so that they no more than entered them than they were out of them. That their lights picked up evidence of what they thought was another patch of fog approximately two to three hundred feet away, at which time Barker was travelling 55 miles per hour. The moment he realized that it might not be a patch of fog, he took his foot off the accelerator and the speed of the car was reduced to 50 or 53 miles an hour when the density of the smog confronted him. He attempted to apply his brakes but before he could even get this done the collision occurred.
We do not believe that the McLelland case is apposite, for the plaintiff driving east on a gravel road “before noon” saw dense smoke billowing across the highway and although he slackened his speed he entered this dense smoke, discovered that there was absolutely no visibility, whereupon he reduced his speed to about 8 or 10 miles an hour and a head-on collision occurred with the defendant’s truck. Both the plaintiff and the defendant were deliberately moving along in opposite directions, “enveloped in a dense screen of smoke in which neither had any degree of visibility whatsoever. Under such circumstances there can be no question as to the fact that both drivers-were guilty of negligence.”
*660 In the case at bar the accident happened at night and Barker, upon realizing the density of the smog, immediately set in motion an attempt to apply his brakes to bring his car to a stop. The holding in the Mc-Lelland case would apply squarely to the action of Cunningham, even though he had slowed his car to four or five miles an hour, in proceeding with no visibility.
In the case of Dominick v. Haynes Brothers, supra, the facts showed that at the location of the collision the highway was obscured by heavy smoke from burning grass on the roadside, which prevented plaintiff and defendant from seeing more than a few feet ahead. Each knowingly drove into this heavy cloud of smoke at a speed of 15 miles per hour and the collision occurred. The court properly held that under the circumstances, it was the duty of each driver, when his vision was “entirely obscured” to stop his car. That is exactly what Barker was attempting to do as soon as he realized the density of the smog and at the time the collision occurred.
In the Employers Fire Insurance Company case, supra [47 So.2d 405], the accident occurred about the hour of “2:30 P. M.” and the highway was enveloped in “dense smoke for a distance of some three to four hundred yards” and the plaintiff drove her automobile into the smoke, discovered that her vision was almost completely obscured, turned on her headlights and was bringing her car to a stop when the vehicle was struck on the left front portion thereof by the defendant’s truck, which he was driving north. In this situation the court held both plaintiff and defendant guilty of negligence. From the description of the smoke enveloping the highway, plaintiff should have known that she would be unable to see in this dense smoke. It was daylight, nothing to prevent her from seeing and realizing the density, as well as the danger of entering the smoke area.
We do not believe that the Strauss case, supra, is apposite. We are in entire accord with the holding of the court on the facts in that case, as well as the law quoted therein, and in the defendant’s brief as applicable, to the effect that when a motorist’s vision is obscured it is his duty to bring his vehicle under such control and operate it at such a rate of speed that it may be stopped within the lumination of his headlights and, if necessary, brought to a dead stop until the cause of interference with his power of vision has ceased. Where a motorist’s vision is obscured the court stated that he had no right to assume that his course of travel was free of danger or obstruction, in the absence of his ability to see clearly ahead and if he continued to travel under such circumstances he does so at his own risk and peril.
In the Lapeze case, supra, the defendant O’Keefe was driving a motor vehicle belonging to his aunt and had as his guest passenger the plaintiff. They were taking a ride out Canal Boulevard, thence to West End and were proceeding on Pontchartrain Boulevard when the accident occurred. This boulevard is bordered on the left by the levee of the New Basin Canal and on the right by a graveled shoulder. Upon reaching West End, there was in evidence small drifts of fog and upon passing the locks of the New Basin Canal plaintiff cautioned O’Keefe to drive carefully. Thereafter, several isolated fog banks were encountered for which O’Keefe slowed down his car, emerging almost immediately into the clear and accelerating. He was travelling between 20 and 25 miles an hour and after passing through several of these small drifts in this manner, the car entered another fog bank which O’Keefe thought to be of the same nature as those previously encountered, however, it was much thicker and more extensive, and, when completely enveloped in its midst, O’Keefe lost his sense of direction and the right wheel of the car slipped off of the surfaced roadway onto the graveled shoulder of the road which was several inches lower than the paved portion. He attempted to swing the car back onto the road but the right wheels caught on the side of the paved roadway, and he then attempt *661 ed to step on the brakes but missed it and the car rolled down the embankment and collided with a tree.
Under these circumstances the plaintiff guest passenger sued and the court held O’Keefe guilty of negligence and in doing so stated:
“It was plainly the duty of O’Keefe to proceed in such a manner that he could stop the car when he became blinded by the enveloping blanket of fog. His failure to do so constituted gross negligence. The evidence shows that, just prior to entering the fog bank in which the accident occurred, he had passed through several small drifts, emerging therefrom almost as soon as he entered, and that he thought they were all of the same character. He had no reason to anticipate this. Instead of being lulled by these signals, they ought to have served as ample warning of greater danger ahead. It must be borne in mind that there was involved no other vehicle or obstruction. The driver of this car did not have the last clear chance of avoiding the accident. His was the only chance ■of avoiding it, and it was caused solely .and only by his negligence.” [158 So. 37.]
While this case is very similar to the case ■under consideration, we believe that it is factually distinguishable in that it is not ■shown how far he proceeded while blinded ■in the dense fog. There is no evidence that he attempted to or intended to bring his automobile to a stop until after he had run off the highway and was in trouble. Further, the drifts of fog which were encountered were evidently more dense than the very light patches of fog which hung above the road and which did not obscure the vision of young Barker and his guest passenger, Dale Rogers. In addition, it was not fog which Barker encountered but “smog”. There was no reason to anticipate smog and due to the very light drifts or patches of fog that had been encountered prior to the smog but which in no way obstructed Barker’s vision, there was no reason for him to anticipate the blinding smog. Also, as previously stated, Barker immediately took action to slow his car down and testified that he intended to put his brake on but the accident happened before he could actually carry into effect such intention. We do not believe that the cited case is controlling of the case at bar.
We agree with counsel for plaintiff that the case of Felder v. Eagle Star Insurance Company, 79 So.2d 90, 91, decided by this Court, is analogous factually and the conclusion reached by the Court is applicable to the case at bar. In this case the court outlined the facts necessary to the decision as follows:
“The accident occurred at about 3 P. M. on the Rural Pride-Baywood Road, which is only somewhat gravelled. Coming from curves or turns at opposite ends thereof, the two vehicles involved herein collided on a reasonably straight east-west stretch of this road, from five to eight hundred feet in length. The road was dusty, due to a dry spell and the small amount of gravel on it, and as a result of the passage of a schoolbus proceeding ahead of Mrs. Felder in the same easterly direction (which before the accident passed Mrs. Mitchell coming from the opposite westerly direction) ; but although visibility was somewhat limited, both drivers testified they could see the way ahead, except at the immediate scene of the accident.
“Immediately before the accident, a dense cloud of dust, far thicker than at other places in the road, had been formed covering a central portion of the aforesaid straight stretch. All witnesses agree that it existed, that it restricted visibility to five feet or less, forming what some of the witnesses described' as a ‘terrible fog of dust’ or an impenetrable ‘ball of dust’ with defined edges like a curtain or wall. This apparently resulted from a gravel-less *662 dust hole formed when the dust shoulders were dragged into the roadbed when the road was widened at this spot, hemmed in by dense foilage there on both sides of the road which inhibited dispersion of dust.
“It is now conceded that Mrs. Mitchell was negligent in proceeding into the dense cloud of dust completely blinded. The principal issue before us is whether Mrs. Felder was contributorily negligent, for allegedly the same reason.
“ * * * Defendant further argues that Mrs. Felder is contributorily negligent in that, perceiving the dust as she rounded the curve 200 feet west thereof, she did not stop sooner, put on her lights, sound her horn, or otherwise warn traffic approaching through the dust fog of her presence.”
The Court concluded:
“We believe the testimony and physical evidence support the trial court’s findings that the collision occurred at the extreme western (Mrs. Felder’s) edge of the dust cloud, on Mrs. Felder’s side (her right, or the southern half) of the road; that upon rounding the curve and seeing the dust cloud, she had pulled to her side of the road and reduced her speed, and upon perceiving the dust’s density ahead, had applied her brakes for a full stop; that Mrs. Felder had nearly or completely stopped when the Mitchell car broke from the dust to strike her car head on.
“We agree with the trial court’s conclusion that under the circumstances Mrs. Felder acted with reasonable caution, prudence, and good judgment, and that she was under no duty to expect another vehicle approaching on the wrong side of the road, see Thomas v. Stewart, La.App. 1 Cir., 29 So.2d 604; Cutrer v. Jones, La.App. 1 Cir., 9 So.2d 859, blindly continuing with almost no visibility, Dixie Highway Express v. C. G. Galbraith & Son, Inc., La. Orleans App., 61 So.2d 218; Hogue v. Akin Truck Line, La.App., 2 Cir., 16 So.2d 366; Hutchinson v. T. L. James & Co., Inc., La.Orleans App., 160 So. 447. We do not believe a contrary conclusion indicated even if plaintiff on the proper side of the road, had been struck after entering the dust cloud while in the process of stopping up on-perceiving her vision would be obscured, Colvin v. West Monroe Trucking Co., Inc., La.App., 43 So.2d 510.”' (Emphasis added.)
We feel that the factual situation in the case at bar was exactly as covered in that part of the Court’s opinion emphasized in the above excerpt. In the case at bar the Barker automobile on the proper side of the road, was struck after entering the dense smog while in the process of attempting to stop, having perceived that his vision would be obscured.
By stipulation there was no question as to the amount of damages should the court hold defendants solely guilty of negligence and, therefore, liable for the damages. We are of the opinion that the judgment of the District Court was correct and it is hereby-affirmed.
Affirmed.